**James Lewis COLE, Appellee,**

v.

**L. V. STEVENSON, Superintendent; and Attorney General of the State of North Carolina, Rufus . L. Edmisten, Appellants.**

No. 78–6211.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1979.

Decided May 5, 1980.

Richard N. League, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellants.

Barry Nakell, University of North Carolina School of Law, Chapel Hill, N. C., for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, and SPROUSE, Circuit Judges.

WIDENER, Circuit Judge:

■ The petitioner, James Lewis Cole, was convicted in a North Carolina State court of second degree murder. After a series of State appeals, which will be discussed in more detail below, Cole filed a petition for a writ of habeas corpus in the federal district court, alleging that the State trial court improperly instructed the jury by placing the burden on the defendant to prove self-defense and an absence of malice, and that this shifting of the burden of proof violated the due process clause of the Fourteenth Amendment as construed in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The district court granted the petition. As we construe *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), we are of opinion the prisoner is barred from litigating his claim on federal habeas corpus because in his direct appeal he (1) failed to except to the alleged error in the jury instructions in his assignments of error on appeal as required by North Carolina Rule of Appellate Procedure 10(a) and (b)(2),[1] and (2) failed to

---

1. North Carolina Rule of Appellate Procedure 10 states:

   RULE 10 EXCEPTIONS AND ASSIGNMENTS OF ERROR IN RECORD ON APPEAL
   (a) Function in Limiting Scope of Review. Except as otherwise provided in this Rule 10, the scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignments of error in the record on appeal in accordance with this Rule 10. No exception not so set out may be made the basis of an assignment of error; and no exception so set out which is not made the basis of an assignment of error may be considered on appeal. Provided, that upon any appeal duly taken from a final judgment any party to the appeal may present for review, by properly raising them in his brief, the questions whether the judgment is supported by the verdict or by the findings of fact and conclusions

otherwise raise the issue in his appeal. These two failures foreclosed both direct and collateral attack of the conviction in North Carolina courts, and are an adequate and separate State ground for denying relief. We therefore reverse.

■ During the trial, Cole's attorney did not object to the jury instructions on the ground that they improperly shifted the burden of proof to the defendant. This lack of objection, however, would not prevent the issue from being raised on appeal, for North Carolina does not have in, this setting a contemporaneous objection rule requiring objection to jury instructions at trial to preserve the question for appeal. See *State v. Gause*, 227 N.C. 26, 40 S.E.2d 463 (1946). But North Carolina Rule of Appellate Procedure 10 does require exceptions to jury instructions to be made after trial if they are to be preserved for appellate review.[2] Cole's counsel did not except at this stage of the proceeding and also made no effort to present the issue on direct appeal. On the issues that were presented, the North Carolina Supreme Court affirmed Cole's conviction, rendering its formal written opinion. *State v. Cole*, 280 N.C. 398, 185 S.E.2d 833 (1972). Cole subsequently filed a petition for post conviction collateral relief in the State court, which was denied. He did not appeal from this denial. Three years later *Mullaney* was decided, and in 1977 the Supreme Court applied this decision retroactively in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). Shortly after *Hankerson* was decided, Cole again sought State collateral relief. This petition was denied by the trial court, and Cole petitioned the North Carolina Supreme Court for review of this decision. The court denied the petition, but without prejudice to his right to seek review in the North Carolina Court of Appeals, which was done. The Court of Appeals affirmed the decision of the lower court on October 3, 1977, basing its holding on Cole's failure to raise the issue on direct appeal. See North Carolina Code § 15–217; *State v. White*, 274 N.C. 220, 162 S.E.2d 473 (1958).[3] The North

---

of law, whether the court had jurisdiction of the subject matter, and whether a criminal charge is sufficient in law, notwithstanding the absence of exceptions or assignments of error in the record on appeal.

(b) Exceptions.

(1) General. Any exception which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be set out in the record on appeal and made the basis of an assignment of error. Bills of exception are not required. Each exception shall be set out immediately following the record of judicial action to which it is addressed and shall identify the action, without any statement of grounds or argumentation, by any clear means of reference. Exceptions set out in the record on appeal shall be numbered consecutively in order of their appearance.

(2) Jury Instructions; Findings and Conclusions of Judge. An exception to instructions given the jury shall identify the portion in question by setting it within brackets or by any other clear means of reference. An exception to the failure to give particular instructions to the jury or to make a particular finding of fact or conclusion of law which was not specifically requested of the trial judge shall identify the omitted instruction, finding, or conclusion by setting out its substance immediately following the instructions given, or findings or conclusions made. A separate exception shall be set out to the making or omission of each finding of fact or conclusion of law which is to be assigned as error.

2. The exception required by Rule 10 need not necessarily and always be made immediately after trial. In *Hankerson*, the defendant was convicted before *Mullaney* was decided. *Mullaney* came down shortly before oral argument in Hankerson's case was scheduled in the North Carolina Supreme Court. The Court granted Hankerson's request to amend his exceptions and assignments of error prior to oral argument and the *Mullaney* issue was addressed. *State v. Hankerson*, 288 N.C. 632, 220 S.E.2d 575, 578 (1975).

3. Post Conviction Hearing Act § 15–217 states:

"Any person imprisoned in the penitentiary, Central Prison, common jail of any county or imprisoned in the common jail of any county and assigned to work under the supervision of the State Department of Correction, who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of North Carolina or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or

Carolina Supreme Court denied certiorari. Cole then filed his petition for habeas corpus in the federal district court.[4]

The district court granted the petition on the merits. In reaching its decision, the court apparently reasoned that the petition was not barred by *Wainwright* because that decision did not apply to the facts of this case, and that even if *Wainwright* did apply, its cause and prejudice exception had been met. *Cole v. Stevenson*, 447 F.Supp. 1268 (E.D.N.C.1978). The court went on to state that the procedural default in this case was the defendant's failure to appeal the denial of State post-conviction relief to the North Carolina Court of Appeals (apparently referring to the first petition for collateral relief in the State court), and held that since the constitutional right in question was not "acknowledged" at the time of direct appeal the petitioner could not have

been expected to raise the issue at that time. 447 F.Supp. at 1272 and n. 10.

We believe the district court misconceived the actual procedural fault. While Cole might be said to be excused from further appeal in order to satisfy exhaustion requirements, the failure to appeal although fruitless would have no effect on the application of *Wainwright*. The North Carolina Court of Appeals was in fact appealed to and in fact refused to hear the merits of Cole's claim on collateral attack because he had not assigned the ground here complained of as error or otherwise raised the issue on direct appeal. Even if Cole had attempted to present the question on direct appeal, he would not have been allowed to do so because he did not properly except to the instructions in his assignments of error as required by Rule 10. Thus, Cole's failure was two-fold. His petition for collateral relief was denied because

---

that the sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under a writ of habeas corpus, writ of coram nobis, or other common-law or statutory remedy, as to which there has been no prior adjudication by any court of competent jurisdiction, may institute a proceeding under this Article.

"The remedy herein provided is not a substitute for nor does it affect any remedies which are incident to the proceedings in the trial court, or any remedy of direct review of the sentence or conviction, but, except as otherwise provided in this Article it comprehends and takes the place of all other common-law and statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment, and shall be used exclusively in lieu thereof."

The Post Conviction Hearing Act was amended in 1977 (effective July 1, 1978) to add new section 15A–1419, which states:

"(a) The following are grounds for the denial of a motion for appropriate relief:

(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so. This subdivision does not apply to a motion based upon deprivation of the right to counsel at the trial or upon failure of the trial court to advise the defendant of such right. This subdivision does not apply when the previous motion was made within 10 days after entry of judgment.

(2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment or upon a

previous motion or proceeding in the courts of this State or a federal court, unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.

(3) Upon a previous appeal, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.

(b) Although the court may deny the motion under any of the circumstances specified in this section, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious.

Petitioner argues that he falls within the "interests of justice and good cause shown" exception in subsection (b), but § 15A–1419 was not in effect when the petitioner sought collateral relief and thus does not apply to this case.

4. The state habeas corpus proceedings described in the above paragraph were not part of the record in the district court. While this case was pending on appeal, appellees filed an uncontested motion to supplement the record with these documents. The motion was denied, but the appellees were given leave to include these documents in an appendix to be filed with their brief. While appellees refer to this additional appendix in their brief, there is no record that it was filed with the clerk's office. However, since the information derived from these documents has not been contested by the State, we rely on the description of these documents found at pages 30–31 of the appellee's brief.

he did not choose to present the issue on direct appeal and because of the default he did not meet the procedural requirements of § 15–217. However, any effort to present the issue would have failed in any event because he did not comply with Rule 10. Thus, Cole failed to comply with both Rule 10 and § 15–217. Having mandatory requirements to perfect the direct appeal, Cole did nothing. He is thus barred from presenting the question to North Carolina courts under valid provisions of State law.

The issue thus presented in this case is whether Cole's dual failure which barred State court review of this aspect of his conviction should also bar federal habeas corpus relief. In resolving this issue, the central question is whether this case is governed by *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In *Fay*, The Supreme Court held that a State procedural bar arising from a failure to appeal would not prevent federal habeas corpus review unless a "deliberate bypass" of state remedies had occurred. 372 U.S. at 438, 83 S.Ct. at 848. However, language in *Fay* went beyond this holding and adopted the deliberate bypass standard as the test for the sufficiency of State procedural bars to federal habeas corpus review. *Fay*, of course, represents a major exception to the normal rule that a separate state ground for decision will bar review of the federal questions in a case. See, e. g., *Pennsylvania v. Ware*, 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972); *Fox Film Corp. v. Muller*, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935); *Murdock v. City of Memphis*, 20 Wall. (87 U.S. ) 590, 22 L.Ed. 429 (1875). Subsequent Supreme Court decisions have restricted the broad language in *Fay*, not as a diminution of the power of a federal court in habeas corpus proceedings, but based on the developing recognition that in the interests of comity between federal and State courts, federal habeas corpus review of State court decisions should be somewhat restrained. The question now is, is the exercise of the power appropriate? *Francis*, infra, 425 U.S. pp. 538–539, 96 S.Ct. pp. 1709–1710. One means of fostering these notions of comity has been to substitute the cause and preju-

dice test spelled out in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), for the deliberate bypass standard adopted in *Fay*. We need not review the development of this test since it has been discussed in detail elsewhere. *Wainwright, supra* ; *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). For our purposes it is sufficient to say that the cause and prejudice test has been applied to bar federal habeas corpus review of State convictions where the defendant later challenged the makeup of the grand jury without objecting on that ground prior to trial as required by State law, *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and where the defendant later challenged the voluntariness of his confession without objecting when the confession was introduced, *Wainwright, supra.*

The Supreme Court has not decided where the final line between *Wainwright* and *Fay* will be drawn, but whatever the full effect of *Wainwright* may turn out to be, it has restricted *Fay* to some extent or other because its holding was grounded on "an independent and adequate state procedural ground which would have prevented direct review" of "contentions of federal law which were *not* resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." 433 U.S. at 87, 97 S.Ct. at 2507 (emphasis in original). While the rule of *Fay*, that an independent State ground will not bar review unless deliberate bypass is found, has been changed by *Wainwright* to the rule that it will bar review unless cause and prejudice is found, and we do not take into account the facts of a particular case, we need not engage in any difficult line drawing between *Fay* and *Wainwright* in deciding the case at bar for in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), decided only six days before *Wainwright*, the Supreme Court clearly indicated that the separate State ground rule should apply to the facts of our case.

*Hankerson* held that *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), should be applied retroactively. *Hankerson* was a North Carolina case. The North Carolina Supreme Court in its opinion and the State in argument before the United States Supreme Court, with respect to the retroactivity of *Mullaney*, raised the problem of a flood of new trials which would be required by a retroactive application of *Mullaney.*[5] At the time *Hankerson* was argued, North Carolina had 722 inmates who had been sentenced for second degree murder. These prisoners might argue that under proper instructions following *Mullaney* their convictions might have been for manslaughter. Additionally, there were an undetermined number of prisoners whose convictions might be overturned for improper self-defense instructions. North Carolina's attorney in *Hankerson* was questioned extensively by the Court concerning this potentially devastating impact on North Carolina's judicial system. And, of course, such considerations are proper in determining whether a decision should have retroactive application. *Linkletter v. Walker*, 381 U.S. 618, 636–37, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1964). Thus, the Court was aware of this problem in North Carolina when deciding *Hankerson*. In its decision the Court decided a part of the case for each side. *Mullaney* was applied retroactively, but the State was given a means of protecting herself against a flood of new trials. As the Court said:

> "Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on

the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error."

432 U.S. at 244, n. 8, 97 S.Ct. at 2345–2346 (the footnote is quoted in full). Thus, the Court based, at least in part, its decision to apply *Mullaney* retroactively on this protection against new trials in old cases.

The North Carolina courts have relied on the protection. They have repeatedly refused to rehear appeals involving alleged *Mullaney* violations because no assignment of error on that ground was made on appeal, each case relying in terms on footnote 8. *State v. Crowder*, 293 N.C. 259, 243 S.E.2d 143 (1977); *State v. Brower*, 293 N.C. 259, 243 S.E.2d 143 (1977); *State v. Jackson*, 293 N.C. 260, 247 S.E.2d 234 (1977); *State v. May*, 293 N.C. 261, 247 S.E.2d 234 (1977); *State v. Riddick*, 293 N.C. 261, 247 S.E.2d 234 (1977). Additionally, North Carolina cases, including the case at bar have refused State collateral relief for failure to raise the issue on direct appeal. *State v. Watson*, 37 N.C.App. 399, 246 S.E.2d 25 (1978); *State v. Abernathy*, 36 N.C.App. 527, 244 S.E.2d 696 (1978). On the other hand, when the procedural requirements have been met, the North Carolina courts have not hesitated to grant a new trial based on *Mullaney* and *Hankerson*. *State v. Sparks*, 293 N.C. 262, 248 S.E.2d 339 (1977); *State v. Wetmore*, 293 N.C. 262, 248 S.E.2d 338 (1977). In denying motions for reconsideration, the North Carolina Supreme Court has repeatedly stated:

> "Inasmuch as defendant did not assign as error on appeal the failure of the trial judge to place the burden of proving the absence of heat of passion or the absence of self-defense on the state, . . . [citation omitted] he has waived his right now to complain about such errors. *Hankerson v. North Carolina*, 432 U.S. 233, 244, n. 8, 97 S.Ct. 2339, 2345, 53 L.Ed.2d 306 (1977)." E. g., *State v. Crowder*, *supra*, 243 S.E.2d 143.

---

**5.** Transcript of Oral Argument at 16–20, *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *State v. Hankerson*, 220 S.E.2d at p. 59.

In denying State collateral relief, the Court of Appeals has stated:

"Even though Rule 10(b)(2) and *State v. Hunt* [283 N.C. 617, 197 S.E.2d 513 (1973)], *supra*, do not require an objection to be made at the time of the trial in order to preserve the exception, they do require that an exception by duly noted in the record and argued on appeal in order to preserve the claim of error.

"Since the defendant in the present case failed to preserve his claim of error in the required manner, he is not entitled to raise the question for the first time on a motion for a new trial in a post conviction hearing.

"The Post Conviction Hearing Act does not provide a substitute for appeal. *State v. White*, 274 N.C. 220, 162 S.E.2d 473 (1968). *See* 4 Strong's N.C.Index 3d, Criminal Law § 181.

. . . . Since the defendant in the present case could have challenged the jury charge on direct appeal just as *Hankerson, Sparks* [293 N.C. 262, 248 S.E.2d 339] and *Wetmore* [293 N.C. 262, 248 S.E.2d 338] did, he is not entitled to make a collateral attack on his conviction in a post-conviction proceeding."

*State v. Abernathy*, 244 S.E.2d at 698–99.

The North Carolina courts have recognized an exception where the failure to appeal was for reasons beyond the defendant's control. *State v. Wilson*, 269 N.C. 297, 152 S.E.2d 223 (1967); *State v. White*, 274 N.C. 220, 162 S.E.2d 473, 477 (1968). Petitioner argues that the change of law in *Mullaney* and *Hankerson* should excuse his failure to raise the issue since this change was beyond his control, but the argument is not persuasive. The change of law in no way prevented the issue from being raised on appeal. The chances of success were substantially increased after *Mullaney* and *Hankerson*, but petitioner was at the time still free to raise the issue. Also, *Sparks* and *Wetmore* illustrate some prisoners did. As an example of the beyond his control exception, the court in *White* cited *Wilson*, where the defendant failed to pursue an appeal because he could not afford to pay his lawyer. The distinction between *Wilson* and the case at bar is obvious. Cole had a lawyer who did appeal his case. It cannot be said that the defendant was prevented from raising the *Mullaney* issue on appeal by factors beyond his control.

■ From the above discussion, it is clear that the Supreme Court intended North Carolina to have the protection of footnote 8 and that the North Carolina courts have used that protection in the intended manner. To take the prisoner's view in our case would have us remove that protection and, in effect, overrule footnote 8. There are only two basic ways a defendant can forfeit his right to review of a jury charge in North Carolina on a particular issue: by not excepting on that ground as required by Rule 10 and by not otherwise raising it on direct appeal. The petitioner did neither in this case, and thus, if footnote 8 in *Hankerson* is to have any meaning in North Carolina, it must apply in this case. As noted above, North Carolina does not have a contemporaneous objection rule which applies to such jury instruction at trial, and if *Wainwright* does not apply when both the North Carolina procedural rules are not followed, then footnote 8 of *Hankerson* becomes meaningless in North Carolina. At this point it is well to note that the values protected by a contemporaneous objection rule are also served, with only slightly diminished force, by the North Carolina rule.

Such a result would be quite inconsistent with footnote 8 in *Hankerson* which expressly states that the *Hankerson* extension of retroactivity to *Mullaney* need not cause a flood of new trials if States enforce their procedural rules. If a federal court ignores North Carolina procedural bars and grants federal habeas corpus relief, then new trials will be required and the inferior federal courts will be stripping North Carolina of the protection afforded by the Supreme Court in footnote 8. This result would be doubly inconsistent since *Hankerson* itself was a North Carolina case.

The prisoner argues, of course, seeking to confine *Wainwright* to its facts, that the case was set in a failure to object during a

trial and that much of the rationale of that case is devoted to the reasons why a State contemporaneous objection rule should be valid. While that is true, it does not change the fact that the separate State ground rule set out in *Fay* was changed by *Wainwright.* It also does not answer the fact that footnote 8 in *Hankerson* must be dealt with in this opinion. *Hankerson* was decided only six days before *Wainwright,* so we do not even speculate that the court which decided *Hankerson* was not aware of the forthcoming *Wainwright* decision and did not write in view of it. As previously noted, the Supreme Court of North Carolina in its opinion, and the State on argument in the Supreme Court of the United States, emphasized the effect on the administration of justice as that matter affected the retroactivity of *Mullaney.* The North Carolina Supreme Court devoted a part of its opinion to discussion of the effect not only in North Carolina, but also in other States, while the questioning during oral argument centered around the effect in North Carolina. We also do not speculate that footnote 8 is merely a dictum, speaking abstractly, and not even applying to the State procedure which was in that very case in question before the Court. The footnote was obviously part and parcel of the *Hankerson*

decision, and we see nothing in *Wainwright* that the separate state ground rule should not be applied to a fact situation arising on appeal rather than at trial. Indeed, footnote 8 in *Hankerson* indicates to us that it should be so applied, at the very least so far as jury instructions are concerned.

Further support for our result might be found in two of the concurring opinions in *Wainwright,* that the waiver rule of *Fay* is of limited, if any, application when the choice was made by an attorney and in which the defendant took little or no part. At least one court, *Frazier v. Czarnetsky,* 439 F.Supp. 735 (S.D.N.Y. 1977), has decided that *Wainwright* applies to appellate default for those reasons. But, while we do not reject it, we need not rely on the reasoning of the concurring opinions, for we think that footnote 8 in *Hankerson* so clearly dictates the result in this case that it must be followed.[6]

Having decided that *Wainwright* through *Hankerson* footnote 8 applies to the procedural bars in this case, we now turn to the question of whether Cole has met the cause and prejudice exception of *Wainwright.* We hold that the petitioner has not shown adequate cause for failing to follow State procedural rules. We therefore do not reach the prejudice issue.[7] Petitioner ar-

**6.** Two prior decisions of this circuit are consistent with this holding, although they were decided under the laws of South Carolina and Virginia, both of which require objections at trial to erroneous jury instructions in order to preserve the issue for review. *Gore v. Leeke,* 605 F.2d 741 (4th Cir. 1979); *Frazier v. Weatherholtz,* 572 F.2d 994 (4th Cir. 1978). Each case held that *Wainwright* applied to bar review of the validity of jury instructions under a *Mullaney* claim where there was a failure to object at trial and apparent failure to raise on appeal. *Frazier* also cited footnote 8 of *Hankerson* in support of its decision. See also *Crowell v. Zahradnick,* 571 F.2d 1257, 1258 n. 1 (4th Cir. 1977), which affirmed, on an alternate theory, that the *Wainwright* bar of independent state procedural grounds prevented review. The prisoner in *Crowell* had neither objected at trial nor had raised proper questions on appeal. But see *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.), cert. den., 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978), where the majority held, without mentioning *Hankerson,* that a Michigan criminal conviction was subject to review, notwithstanding the prisoner's failure to object

at trial to the jury instruction or raise the question on appeal. The dissenting opinion would have held that *Hankerson,* n. 8, insulated the conviction from review.

**7.** At least one circuit has been said to have considered *Wainwright* as implying that if the prejudice to the petitioner is clear the cause element need not be shown. *Berrier v. Egeler,* 583 F.2d 523, 525 (dissenting opinion) (6th Cir. 1978). The Supreme Court rejected this view in *Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1975), one of *Wainwright's* lineal ancestors. The Court said: "In a collateral attack upon a conviction that rule requires, contrary to the petitioner's assertion, *not only* a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, *but also* a showing of actual prejudice." (Italics added) We have previously rejected the notion that prejudice alone may satisfy the *Wainwright* exception. *Crowell v. Zahradnick,* 571 F.2d 1257, 1258 n. 1 (4th Cir. 1977) ("we find neither the cause nor prejudice necessary for relieving

gues and the district court agreed that at the time of direct appeal petitioner had no chance of success in challenging the jury instructions on *Mullaney* grounds, and that this is sufficient cause for failing to preserve the issue since any effort along that line would have been futile. This argument is without merit for, if it were accepted, footnote 8, discussed above, would be meaningless not only in North Carolina, but in every State. If change of law is cause for failing to object, then no State procedural bar could prevent federal habeas corpus in the context of cases held to be retroactive, and the Supreme Court's reliance on procedural bars as a reason for extending *Mullaney* retroactively would be circumvented. Footnote 8 clearly implies that the Court feels that change of law is not cause under *Wainwright*. The Court has yet to give any further instruction on the cause and prejudice test and the prisoner cites no cases where change of law was held to constitute cause. We decline to so hold.

For the foregoing reasons, we hold that the petitioner is barred from seeking federal habeas corpus relief because he failed to comply with valid State procedural requirements which are an adequate and independent State ground for preventing direct review of the merits of the question either in his direct criminal appeal or on appeal on collateral review.

The judgment of the district court is accordingly

*REVERSED.*

MURNAGHAN, Circuit Judge, dissenting:

Two wrongs don't make a right; no more do three.

## I.

History will no doubt identify the latter half of the Twentieth Century as a fertile era in the development of American constitutional principles applicable in criminal cases. There have been important reinforcements of old concepts such as the decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). New principles have been adopted as in the numerous elucidations and expansions of the doctrine that no person should be denied the right to counsel. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The doctrine has grown during the period so that the appearance of counsel is not enough. Rather, there must be the actuality of adequate representation. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978).

Those are but examples from a wide range of uplifting and improving decisions. Nevertheless, and perhaps inescapably, the flow of the development has sometimes ranged beyond the river banks and ravaged cultivated fields which might best be spared. Excesses are essentially inevitable when any great movement is in the fullness of its strength.[1] The role of judges is as much the replanting of the orchard which the rampaging river has uprooted as it is the removal of obsolete obstacles in the way of the water's rush.

It is a background consideration crucial to an understanding of the present case

Crowell of the requirement of the Virginia rule.")

1. The generally unhappy and unhealthy state of American penal institutions creates an atmosphere in which courts find the impulse almost irresistible to fashion rules which will spare defendants in criminal cases from prison sentences even though such rules contradict developed doctrines which have otherwise withstood the tests of time. An extant substantive or procedural rule making conviction more rather than less likely, however sound it may be, may be reversed by judges faced with sending those it is invoked against to prison. The judges who, centuries ago, adopted the rule in the first instance may have operated without such pressures since (a) a sentence of transportation and a chance to make a new life were often an alternative to incarceration, and (b) compassionate concern for those caught in society's intricate web, especially the web spun in large urban centers, was not so strongly felt.

that the law has been developing through pell-mell expansion.[2] The Supreme Court, in *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), had held that the concept of due process embodied the constitutional necessity that a conviction rest on proof of every fact necessary to constitute the crime beyond a reasonable doubt and not merely by a preponderance of the evidence. The rule of *Winship* may be taken for our purposes as itself correct beyond a reasonable doubt.[3] Not so certain, however, is the correctness of the next step taken by the Supreme Court. In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), it determined that, where a state makes heat-of-passion on the part of the accused a factor relevant to guilt, or degree of guilt, the due process clause requires allocation of the burden of proof on the heat-of-passion issue to the prosecution. The unanimous decision to that effect had a very short life for it was, if not actually reversed, severely limited in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).[4]

In *Patterson*, Justice White, writing for the majority, sought to distinguish *Mulla-ney* on the narrow grounds that the Maine statute involved in *Mullaney*, by its language, made the absence of heat-of-passion an integral part of the crime itself, whereas the New York statute dealt with in *Patterson* clearly defined the crime in terms independent of heat-of-passion, making it a matter of affirmative defense that the accused was "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." However, Justice Powell in his *Patterson* dissent effectively deals with the attempted distinction of *Mullaney*, pointing out that the law of Maine, as the law of a number of other states, had long established, in an unambiguous way, that heat-of-passion was an affirmative defense. The law of Maine did not make absence of heat-of-passion an ingredient of its definition of murder. Facial aspects of the Maine statute giving some arguable credence to the majority's approach in *Patterson* simply evaporate in the light of clear interpretations directly to the contrary of the statute by the Maine courts.[5]

Thus, in terms of strict logic, Justice Powell followed the truer line and his rea-

---

**2.** *See, e. g.*, Justice Harlan's reference to the Supreme Court's "fast-moving pace of constitutional innovation in the criminal field." *Mackey v. United States*, 401 U.S. 667, 676, 91 S.Ct. 1160, 1172, 28 L.Ed.2d 404 (1971).

**3.** Although the existence of a dissent from so doughty a civil libertarian as Justice Black might justify one in reasonably doubting.

**4.** *See Farrell v. Czarnetzky*, 566 F.2d 381, 382–84 (2d Cir. 1977) (Oakes, J., concurring). The majority in *Patterson* consisted of Justice White, who wrote the opinion, Chief Justice Burger, and Justices Stewart, Blackmun and Stevens. Justice Powell who had written for the Court in *Mullaney* wrote a dissent in which he was joined by Justices Brennan and Marshall. Justice Rehnquist who, joined by the Chief Justice, had concurred in *Mullaney* took no part in the decision in *Patterson*.

**5.** *State v. Wilbur*, 278 A.2d 139, 144–46 (Me. 1971):

> We are satisfied that [the presumption of malice arising upon proof beyond a reasonable doubt of an intentional and voluntary killing], bearing as it does not on the guilt or innocence of felonious homicide but only upon the degree of and possible punishment for such homicide, should be accorded such

procedural force as is required to make [the presumption] truly effective, that is, to cast the burden of persuasion upon the defendant to prove sudden provocation and heat of passion by the fair preponderance of all of the evidence.

*See also* Allen, *The Restoration of In Re Winship: A comment on Burdens of Persuasion in Criminal Cases After Patterson v. New York*, 76 Mich.L.Rev. 30, 58 n.100 (1977):

> However "circumlocutory" the Maine statute and cases involved in *Mullaney*, they "merely [made] absolutely clear the fact that the [defendant] bears the burden of proof on [the] issue" of provocation. By demonstrating the [Supreme] Court's competence to see through the form of a statute to its substance, *Lavine [v. Milne*, 424 U.S. 577, 583–85 [96 S.Ct. 1010, 1014–15, 47 L.Ed.2d 249] (1976)] seems to force the conclusion that the only explanation of *Patterson* is that the court wished to reject the principle of *Mullaney*. In fact, *Lavine* is not an aberration; the Court has long recognized that states have often used the word "presumption" and its derivatives in a very loose way.

Allen concluded "that *Patterson* overruled *Mullaney*." *Id.* p. 54.

soning seems to compel the conclusion that *Patterson* is irreconcilable with *Mullaney* and, therefore, must be deemed to have overruled and not simply to have distinguished *Mullaney*. Yet the inexorability of Justice Powell's relentless logic does not compel the conclusion that he was right in *Mullaney* and the members of the majority in *Patterson* were wrong. It has reached the point of triteness to repeat the observation of a giant among America's jurisprudential thinkers that the life of the law has been experience. Nevertheless, such is the case here. Justice Powell was driven by the force of his reasoning to the startling conclusion that, while a state might eliminate heat-of-passion altogether from the definition of the crime or its degree, nevertheless, if it should choose to introduce it as an element favorable to a defendant, it could only do so by imposing the burden of proving [6] absence of heat-of-passion on the prosecution. The accused, while he might, according to Justice Powell, be denied altogether any consideration for the fact that heat-of-passion was present, could not be forced to assume the burden of proving its presence.[7]

Experience repudiates that logical conclusion. Heat-of-passion, self-defense and other extenuating or justifying considerations have traditionally been matters as to which courts have allotted the burden to the accused, principally no doubt because of judicial disinclination to compel a party to prove a negative. The adoption of due process clauses in the Fifth Amendment and in the Fourteenth Amendment were not accompanied by any indications of a belief that they upset traditional allocations of burdens as to criminal affirmative defenses. The Fifth Amendment was adopted in 1791; the shift of the burden in federal prosecutions only took place in 1895.[8] The Fourteenth Amendment was ratified in 1868, and the shift in the law brought about by *Mullaney* did not occur until 1975. To rely on the fair play concepts of due process to strip legislatures and courts of all power to regulate trial details such as burden of proof assignment is to ignore history and to exalt a logical concept far beyond its intrinsic limits.

However, we need not, and should not, seek to achieve resolution of the abstruse question of how, in some future case, the Supreme Court will resolve the contradiction between *Mullaney* and *Patterson*. The *Patterson* majority's decision may indeed constitute a basis for a prediction that the Supreme Court will, the next time it is presented with the question, eliminate *Mullaney* as a factor altogether.[9] To the extent that the majority's opinion reflects an anticipation of the overruling of *Mullaney*, and a consequent attempt to replant a field

**6.** For our purposes, we need not confuse ourselves and others by alluding to distinctions between the burden of going forward and the burden of persuasion. The discussion will not suffer if we adhere to the more customary phraseology of "burden of proof." *See United States v. Hollis*, 569 F.2d 199, 204 n.6 (3d Cir. 1977); *McCormick's Handbook of the Law of Evidence* § 336 (2d ed. E. Cleary 1972).

**7.** The *Winship/Mullaney* test identifies those factors of such importance, historically, in determining punishment and stigma that the Constitution forbids shifting to the defendant the burden of persuasion when such a factor is at issue. *Winship* and *Mullaney* specify only the procedure that is required when a State elects to use such a factor as part of its substantive criminal law. They do not say that the State must elect to use it. For example, where a State has chosen to retain the traditional distinction between murder and manslaughter, as have New York and Maine, the burden of persuasion must remain on the prosecution with respect to the distinguishing factor, in view of its decisive historical importance. But nothing in *Mullaney* or *Winship* precludes a State from abolishing the distinction between murder and manslaughter and treating all unjustifiable homicide as murder. In this significant respect, neither *Winship* nor *Mullaney* eliminates the substantive flexibility that should remain in legislative hands.

432 U.S. at 228–29, 97 S.Ct. at 2336–2337.

**8.** *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

**9.** Nevertheless, the Supreme Court has yet to do so. To the contrary, on June 17, 1977, immediately after handing down *Patterson*, the Supreme Court announced the decision in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), which necessarily prolonged the life of *Mullaney* inasmuch as it announced that *Mullaney* was to be applied, and that application was to be fully retroactive.

devastated by the torrent to which I have earlier alluded, the majority has edged, no doubt inadvertently, into the commission of the first of the wrongs which do not make a right. It is our role to live with, and enforce application of, the rule in *Mullaney* until the Supreme Court has itself repudiated it.[10]

Furthermore, in Cole's case, we are concerned not only with "heat-of-passion" but also with the concept of self-defense. They have been lumped together by many courts for purposes of applying *Mullaney*, but it is by no means evident that they may, for all purposes, be treated identically. While Justice Powell has indicated that heat-of-passion might be eliminated altogether as a factor favorable to the defendant without violation of due process concepts, it is far less likely that a state legislature could constitutionally spell out a definition of murder which would lead to conviction even though self-defense, under the evidence, were clearly made out. The idea that one with no viable alternative may protect himself and need not merely accept the probable consequence of death from outrageous conduct of another is too core-central to accept that a legislature could eliminate self-defense altogether by excusing the prosecution from the task of proving its absence and by prohibiting the accused from putting it forth as a defense.

That probable difference as to the legislative power to eliminate the factors of heat-of-passion and self-defense altogether should not logically be determinative as to whether the factors may be made matters of affirmative proof by the accused. Nevertheless, it clouds the crystal ball even more, and makes prediction of future Supreme Court action reversing *Mullaney* even less appropriate.[11]

In any event, following *Mullaney* the highest court of North Carolina has clearly applied the doctrine of that case to self-defense, *State v. Hankerson*, 288 N.C. 632, 648–52, 220 S.E.2d 575, 587–89 (1975), *reversed on other grounds, Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977),[12] as well as to heat-of-passion.[13] At least until North Carolina seeks, itself, to revert to the pre-*Mullaney* position, we must accept those decisions, especially since it is possible that they might be sustained independently as a matter of state common law, or on state constitutional grounds, regardless of the fate of *Mullaney* when its doctrine next is reviewed by the United States Supreme Court.

## II.

The 17th of June 1977 was a day of major significance for purposes of this case, for

---

**10.** *See, e. g., Northern Virginia Regional Park Authority v. United States Civil Service Commission*, 437 F.2d 1346, 1350 (4th Cir. 1971), *cert. denied*, 403 U.S. 936, 91 S.Ct. 2254, 29 L.Ed.2d 717 (1971):

> [r]arely would a Court of Appeals be justified in declaring devitalized and no longer to be followed a Supreme Court decision passing directly on the precise point at issue . . . The resolution of possible inconsistencies in the Supreme Court's decisions is ordinarily not the prerogative of inferior courts. *Blalock v. United States*, 247 F.2d 615, 621 (4th Cir. 1957).

*Cf. Penfield Co. of California v. Securities and Exchange Commission*, 143 F.2d 746, 749 (9th Cir. 1944), *cert. denied*, 323 U.S. 768, 65 S.Ct. 121, 89 L.Ed. 614 (1944) ("We cannot agree that an inferior federal court may make its prognostication of the weather in the Supreme Court chambers, however well fortified in judicial reasoning, and forecast that the Supreme Court 'seems' about to overrule its prior deci-

sion, and outrun that Court to the overruling goal.").

**11.** While Justice Blackmun, with the concurrence of the Chief Justice, in his separate opinion in *Hankerson v. North Carolina*, 432 U.S. 233, 245, 97 S.Ct. 2339, 2346, 53 L.Ed.2d 306 (1977), explicitly suggests that the burden as to self-defense may constitutionally be assigned to the accused, there is little to indicate what the views of other members of the *Patterson* majority on the subject are.

**12.** *See* 432 U.S. at 238, 97 S.Ct. at 2342 where the extension of the *Mullaney* doctrine to self-defense by the North Carolina Supreme Court is described.

**13.** *State v. Biggs*, 292 N.C. 328, 339–41, 233 S.E.2d 512, 518–19 (1977); *cf. State v. Hankerson*, 288 N.C. 632, 648, 220 S.E.2d 575, 587 (1975) ("As a matter of state law, . . . our rules allocating burden of proof on self-defense and heat of passion are the same.").

both *Patterson* and *Hankerson* were handed down by the Supreme Court on that day. *Hankerson* dealt with the situation created by the North Carolina Supreme Court's decisions that (a) *Mullaney* required the shift of the burden of proof on self-defense to the prosecution, but (b) *Mullaney* would not be given retroactive effect and so would not be available to Hankerson who had been tried in November 1974 while *Mullaney* was not decided until June 1975. The Supreme Court reversed on the grounds that the doctrine of *Mullaney* was retroactive. Nevertheless, attentive to concerns expressed by the State of North Carolina as to the large number of completed cases which would have to be reopened by retroactive application of *Mullaney*, Justice White, writing for the majority in *Hankerson*, included the footnote 8 [14] which has led the majority to the conclusion that retroactivity of *Mullaney* is only a mirage in those states such as North Carolina which have procedural requirements relating to the need to take some step, whether at the trial level or at the appellate level, to preserve a contention that there had been error of constitutional proportions.

With respect, the footnote was completely unnecessary to the decision in *Hankerson*. As a case coming before the Supreme Court on direct review, *Hankerson* presented no issue as to whether the retroactivity which it *held* adhered to *Mullaney* would extend to cases where all remedies by direct review had previously been exhausted and the convict's claim would be by way of *habeas corpus* or other post-conviction proceeding. Justice Powell concurring emphasized that point and further alluded to the question which will some day arise for the Supreme Court, though it clearly was not presented in *Hankerson*, of what retroactivity rule should apply in cases of collateral attacks on convictions where the attacks are based on *Mullaney*. Justice Powell and Justice Marshall, relying on Justice Harlan's separate opinion in *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1160, 1164, 28 L.Ed.2d 404 (1971), and Justice Marshall's observations in *Williams v. United States*, 401 U.S. 646, 665, 91 S.Ct. 1148, 1158, 28 L.Ed.2d 388 (1971), each separately concurred in *Hankerson* to emphasize that retroactivity should apply only in matters pending on direct review, and not in cases like Cole's and most of the other cases which would constitute the deluge about which North Carolina expressed alarm when *Hankerson* was argued.

The real significance of *Hankerson* f.n.8, consequently, is that it confirms that the majority of the Supreme Court in that case declined to adopt the limited retroactivity principle for *Mullaney* which would have restricted it to cases on direct appeal and denied it for *habeas corpus, coram nobis*, and post-conviction proceedings. Had the Supreme Court majority done so, there would have been no need for f.n.8, for Supreme Court action itself would have stanched the deluge. Instead, the Supreme Court impliedly acknowledged that the deluge would exist, and suggested a possible way whereby states, on their own, might minimize the problem. The Supreme Court was not vetting the procedure of invoking the contemporaneous objection rule in advance. It was not holding that it would, when actually presented with the issue, allow a state to bar the assertion of a newly-established, but fully retroactive, constitutional right on the grounds that the point had not been preserved by objection at trial. It was saying "maybe", or "perhaps in some cases but not in others", putting the prob-

---

14. Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, *e. g.*, Fed.Rule Crim.Proc. 30.
432 U.S. at 244, 97 S.Ct. at 2345–2346.

lem in the laps of others (the state courts), and rather hoping the whole thing would go away.

Tempting as it would be to adopt and apply to Cole's case the limitation on retroactivity urged by Justices Powell and Marshall in *Hankerson*, it simply would violate the rules of the game for a Circuit Court of Appeals to do so when a majority of the Supreme Court is on record as unwilling to accept that approach. Nevertheless, such an approach, though not articulated, may in fact underly the majority's opinion. The opinion may be grounded on an expectation that the Supreme Court will limit the retroactivity of *Mullaney* to cases of direct appeal, and deny the applicability of the doctrine in cases, such as Cole's, where the contention has been raised collaterally. Viewed from that perspective, the majority opinion would constitute an attempt to pile up sandbags at a weak point on the shore in the hopes of preventing a break-through by the freshet at that location. Regrettably, however, such activity contravenes an order from higher authority to let the water flow unimpeded at the particular point. Such an effort to shore up the levee would be, in the face of a flat statement of full retroactivity, and the indications, derivable from f.n.8, of a belief by the Supreme Court that retroactivity would extend to cases which had become final, subject only to collateral attack by way of *habeas corpus, coram nobis* or post-conviction proceeding, a second wrong. For any adjustment in the full retroactivity for *Mullaney* announced in *Hankerson* requires action by the Supreme Court itself.

### III.

The third wrong is the acceptance of the dictum of *Hankerson* f.n.8 as fully disposi-

tive of Cole's case. In the circumstances of Cole's case, the *holding* of *Hankerson* on full retroactivity of *Mullaney* cannot be reconciled with the *Hankerson* dictum as to the availability of waiver as a basis for denying the benefits of *Mullaney*. There simply is no showing of waiver by Cole. In its absence, *Hankerson* f.n.8 simply has no application, or, alternatively, if irreconcilable on the facts with the *Hankerson* holding, the dictum of f.n.8 must yield. The dictum of *Hankerson* f.n.8 is read by the majority far more strongly than its own text permits, and application of the footnote as the majority proposes leads to disturbing conflicts with principles settled in other Supreme Court decisions.

In determining that f.n.8 has no applicability here, we need not rely on hyper-technical reading.[15] We thus need not discard the dictum on the grounds that it refers solely to a contemporaneous objection rule applicable at the trial court level and not to a rule such as the North Carolina one here involved. North Carolina did not, at the time Cole's case was being considered, require an objection at trial to a jury instruction but only set up a necessity that the matter be raised at the appellate court level on direct review. We can assume for present purposes, although the assumption is by no means assuredly correct,[16] that the reference in f.n.8 to objection at the trial level would be extended to objection at the appellate level as well.[17]

Nor need reliance be placed on the consideration that the Supreme Court was indefinite in the extreme when it pointed out that the states ". . ., if they wish, *may* be able to insulate past convictions." The language indicates that the footnote is

**15.** Although, given its origins and purposes, and especially the essential disharmony between f.n.8 and the full retroactivity doctrine established in the *text* of *Hankerson*, a fighting-fire-with-fire technique by which what is apparently given with one hand is snatched away with the other might not be altogether inappropriate.

**16.** F.n.8 refers to F.R.Cr.P. 30 for support, and F.R.Cr.P. 30 deals exclusively with preservation

of a point for appeal by objection "before the jury returns." It has nothing to do with any procedure at the appellate level.

**17.** In approaching the matter in this fashion, we in no way criticize the district judge's reliance on the fact that f.n.8 refers only to objection at the trial level. He may well be right. It is just that another route to the same result exists which seems more satisfactory.

no more than a tentative, prayerful suggestion as to a technique which the states might employ, with no guarantee that, once they had tried it, the Supreme Court would, on full consideration of each individual case, uniformly agree that it was appropriate. The dictum no doubt reflected uneasiness about the suggested large burden deriving from all those terminated cases which would have to be reopened and retried.[18] The dictum does not purport to address all the myriad factual settings in which the effect of failure to object in a state court on the right to raise *Mullaney* would be an issue.

What I believe to be controlling on the point concerns the extent to which *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), has (or more precisely, does not have) application here. I would hold that the *Sykes* rule barring *habeas corpus* review of matters not preserved by contemporaneous objection does not properly apply to the situation before us.

*Sykes* represented a retreat from an overbroad dictum announced in *Fay v. Noia*, 372 U.S. 391, 435, 438, 83 S.Ct. 822, 847, 848, 9 L.Ed.2d 837 (1963). *Fay* seemed to say that failure to comply with a state procedural rule would constitute a waiver of a federal constitutional claim advanced in a *habeas corpus* petition *only* where the failure to raise the point at the trial or on direct appeal reflected a deliberate by-pass by defense counsel, i. e., a tactical choice to retain the constitutional point as a second string to the bow rather than raise it in time for corrective action in the state proceeding. *Sykes* regarded the *Fay* dictum as objectionably narrow in restricting to one, and one only, the considerations which

would foreclose federal *habeas corpus* review of state convictions. *Sykes* expressed a preference for the rule independently announced in *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). *Francis* established that failure to raise a point contemporaneously would constitute a waiver unless there was a justifiable *cause* for not raising the point and the failure to raise it resulted in *prejudice* to the accused.

The point which is of decisive importance is that *Francis* and *Sykes* concerned procedural questions peculiar to the particular facts of the case, not generally applicable rules of constitutional law, enforceable in every case, regardless of the special facts.[19] Neither *Francis* nor *Sykes* presented a situation in which a rule of general applicability had been violated. *Francis* concerned, as its predecessor, *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), had concerned, issues as to the correctness of the grand jury composition. A factual issue of correctness *vel non* in the circumstances of the particular case was involved. There was no sweeping rule prohibiting use of grand juries altogether.[20]

*Sykes* concerned the propriety of the trial court's admission of the accused's confession where once again no rule of law prohibited introduction of all confessions. Rather the law interdicts admission only of those confessions which have been coerced. Hence a factual determination had to be made to resolve the question of whether the federal constitutional rule was applicable.

In Cole's case, however, the *Mullaney* rule as to allocation of burden of proof on heat-of-passion and self-defense is one of general constitutional law, applicable in every case.

---

18. The burden would fall not only on the State and its prosecution machinery. It would also be felt by those currently charged with crime, whose hopes for speedy trial would have to accommodate to the inevitable clogging of the system. The burden would also be assumed by the public generally, which has a large interest in seeing justice promptly and efficiently administered to bring recent law-breakers to book.

19. *Fay*, too, concerned such a factual claim, namely that a confession was coerced and

should not have been introduced in evidence. However, it was not a factual claim as to which evidence was needed to determine whether it was well founded. The state stipulated that the coercive nature of the confession had been established, 372 U.S. at 395–96, 83 S.Ct. at 825.

20. Still another case requiring factual exploration of, in the particular instance, the petit jury's composition, is *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

No findings of fact are involved. The error is plain on the face of the record and unquestionably occurred.[21]

*Sykes* makes abundantly clear that allowing application of a state contemporaneous objection rule to bar a *habeas corpus* attack on a conviction depended in that case on the consideration that there were unresolved issues of fact pertinent to the constitutional question.

A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding. It enables the judge who observed the demeanor of those witnesses to make the factual determinations necessary for properly deciding the federal constitutional question. While the 1966 amendment to § 2254 requires deference to be given to such determinations made by state courts, the determinations themselves are less apt to be made in the first instance if there is no contemporaneous objection to the admission of the evidence on federal constitutional grounds.

A contemporaneous-objection rule may lead to the exclusion of the evidence objected to, thereby making a major contribution to finality in criminal litigation. Without the evidence claimed to be vulnerable on federal constitutional grounds, the jury may acquit the defendant, and

that will be the end of the case; or it may nonetheless convict the defendant, and he will have one less federal constitutional claim to assert in his federal habeas petition. If the state trial judge admits the evidence in question after a full hearing, the federal habeas court pursuant to the 1966 amendment to § 2254 will gain significant guidance from the state ruling in this regard.

433 U.S. at 88–89, 97 S.Ct. at 2507. The holding of *Sykes*, therefore, is simply that, where compliance with a state procedural rule will improve the setting in which a court is to address a constitutional question, failure to comply may bar review on *habeas corpus* by a federal court.

Hence, *Sykes* is simply not pertinent in this case. The purposes of the rule favoring deference to a state procedural requirement are entirely absent. When Cole was tried, there was no basis for a belief that the constitutional error now asserted by him could have been avoided or in any way illumined or focused by timely bringing of the matter to the attention of the state court either at the trial or at the appellate level. When Cole was convicted over four years prior to the announcement of the decision in *Mullaney*[22] and his appeal was disposed of by the North Carolina Supreme Court more than three years before *Mullaney*,[23] the law of North Carolina casting the burden on the defense as to heat-of-passion

---

**21.** The situation is closely analogous to that where an applicable statute's requirement that the decision of the Secretary of Health, Education and Welfare be only "after a hearing" is deemed inapplicable when "the only issue to be resolved is a matter of constitutional law concededly beyond his [the Secretary's] competence to decide." *Weinberger v. Salfi*, 422 U.S. 749, 767, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975); *cf. Califano v. Goldfarb*, 430 U.S. 199, 203 n.3, 97 S.Ct. 1021, 1025 n.3, 51 L.Ed.2d 270 (1977) (further administrative review required by statute "would have been futile"). The rule is succinctly summarized in *Wright v. Califano*, 603 F.2d 666, 669 n.9 (7th Cir. 1979):

[42 U.S.C.] Section 405(g) also seems to require the Secretary's decision be "after a hearing." But this requirement is also satisfied where, as is the case here the decision is based solely on a statutory provision claimed to be unconstitutional and the Secretary does

not contend that further administrative proceedings could have resulted in any different decision. . . .

The inability of the Secretary to resolve the constitutional issues in those cases was no greater than that of the North Carolina trial judge in 1971, and the North Carolina Supreme Court in 1972. *Stare decisis* had so firmly embedded the rule as to burden of proof on heat-of-passion and self-defense in the state's jurisprudence that only a decision by the United States Supreme Court like that in 1975 in *Mullaney* could dislodge it. *See* footnote 24 *infra*.

**22.** The trial occurred on May 19–21, 1971. *Mullaney* was decided June 9, 1975.

**23.** The North Carolina Supreme Court opinion was handed down on January 28, 1972. *State v. Cole*, 280 N.C. 398, 185 S.E.2d 833 (1972).

and self-defense was so clearly established[24] that contemporaneous objection or noticing of the point in the appeal papers would have achieved nothing. That such would have uniformly been the case for all convictions finalized in the state courts before the handing down of the *Mullaney* decision on June 9, 1975 is a mighty reason for recognizing the limited extent and effect of the f.n.8 dictum. A state contemporaneous objection rule could sensibly bar raising the *Mullaney* contention if the trial or the disposition on appeal were to occur *after* June 9, 1975 (although the spectre of inadequacy of counsel would immediately arise). It would, however, serve no purpose of *Sykes* to hold that untoward consequences should attach to a failure to raise the *Mullaney* contention *before* June 9, 1975. The *Mullaney* ruling was simply not

predictable, as f.n.8 acknowledges when it states: "If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions." 432 U.S. at 244, 97 S.Ct. at 2345.

Bound as we are by the Supreme Court's *holding* in *Hankerson* that *Mullaney* was fully retroactive, we cannot escape our clear duty to apply *Mullaney* retroactively to Cole's case by woodenly following an *obiter* statement which will not withstand close analysis. It makes a mockery of justice to enforce a rule of supposed waiver predicated on the specious ground that an altogether futile[25] act, the necessity for which was entirely unforeseeable, was omitted.[26]

24. *State v. Jennings*, 276 N.C. 157, 160, 171 S.E.2d 447, 449 (1970) (self-defense); *State v. Freeman*, 275 N.C. 662, 666, 170 S.E.2d 461, 464 (1969) (heat-of-passion on sudden provocation).

25. In the climate of 1971 and 1972, the objection if made might have proved worse than futile. There are judges who could be affected subconsciously, if not consciously, by what they regard as attempts to get them to depart from clearly established law. Without in any way being annoyed, the trial judge and the appellate judges who heard Cole's case might well have been expected by Cole's counsel to conclude that, if the defendant had to assert such a far-out or apparently preposterous claim, his other contentions were of less merit than they might otherwise appear to be. Thus, there was positive reason in 1971 and 1972 not to raise futile points.

The futility in raising the issue on appeal in North Carolina at any time before *Mullaney* was decided is amply demonstrated by the reception it received from the Supreme Court of North Carolina in the two cases cited in the majority opinion as cases in which "the procedural requirements have been met." Maj. op. at 1060. *State v. Wetmore*, 287 N.C. 344, 353–54, 215 S.E.2d 51, 56 (1975), *vacated and remanded for reconsideration in light of Mullaney v. Wilbur, sub nom. Wetmore v. North Carolina*, 428 U.S. 905, 96 S.Ct. 3213, 49 L.Ed.2d 1212 (1976), *new trial ordered*, 293 N.C. 262, 248 S.E.2d 338 (1977); *State v. Sparks*, 285 N.C. 631, 643–44, 207 S.E.2d 712, 718–20 (1974), *vacated and remanded for reconsideration in light of Mullaney v. Wilbur, sub nom. Sparks v. North Carolina*, 428 U.S. 905, 96 S.Ct. 3213, 49

L.Ed.2d 1212 (1976), *new trial ordered*, 293 N.C. 262, 248 S.E.2d 339 (1977).

*Wetmore* and *Sparks* are no basis for a conclusion that Cole's counsel, in 1971 and 1972, should have raised the burden of proof contention subsequently validated in *Mullaney*. The first real inkling that a burden of proof allocation to an accused might be unconstitutional was the September 29, 1972 decision in *Wilbur v. Robbins* [*Mullaney's* predecessor], 349 F.Supp. 149 (D.Me.1972). That was eight months *after* Cole's appeal had been decided. Certiorari had been sought in *Mullaney* on the very issue on April 26, 1973 (42 U.S.L.W. 3021) well *before* the decisions, and undoubtedly *before* the arguments, in *Wetmore* (decided June 6, 1975) and in *Sparks* (decided August 30, 1974). Certiorari was granted with a remand on January 14, 1974, 414 U.S. 1139 (1974). Gestation of *Mullaney* was, therefore, underway insofar as *Wetmore* and *Sparks* were concerned. The parents of *Mullaney* had not even met, however, when Cole's case traversed the North Carolina courts.

26. The repudiation in *Sykes* of the *dictum* of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), suggesting that only a deliberate by-pass would constitute a waiver of a federal constitutional point, should not obscure the nature of the *holding* in *Fay*. The holding of *Fay* has not been overruled, and Cole's case is on all fours with the *Fay* holding. Noia's procedural omission was his failure to appeal at all from a conviction based solely on the coerced confession. The parallel between Noia's failure to appeal at all and Cole's failure to raise the federal constitutional point in his appeal papers is manifest. The futility of an

Moreover, for the purposes of Cole's case, even if *Hankerson* f.n.8 is deemed applicable, the finding of a waiver of the right to raise *Mullaney* would still not be justified. All the North Carolina authorities cited by the majority, Maj. op. at 16, to support the proposition that North Carolina would bar an attempt to raise a *Mullaney* infraction on the grounds that the point was not asserted on direct appeal are cases where the direct appeals were disposed of *subsequent* to September 29, 1972, the date on which the *Mullaney* concept emerged from the womb in Judge Gignoux's decision in *Wilbur v. Robbins*, 349 F.Supp. 149 (D.Me. 1972).[27] From September 29, 1972 on, there was some basis, at least, for holding that there was waiver, because the possibility of success for an argument that the burden of proof on heat-of-passion must always be on the prosecution thereafter existed. Before September 29, 1972, however, that possibility—which was an essential ingredient of any application of a waiver principle—simply had no substantiality. Cole's opportunities to raise the point were exhausted well before September 29, 1972.[28] So, at most, any justifiable reading of *Hankerson* f.n.8 would hold it applicable for the period September 29, 1972 on, but inapplicable to the period prior to that date.

Although I have concluded that *Sykes* has no application here, even if it were applicable there still remains the question of whether its requirement of a showing of cause and prejudice would be met. Indeed, I am satisfied that cause and prejudice are abundantly present. As to cause, what I have earlier written as to the futility and, indeed, the probable adverse consequences of raising a *Mullaney* argument before *Mullaney* was decided is dispositive.

As for prejudice, the district judge found that prejudice existed. His finding is not clearly erroneous and we should accept it. It has adequate support in the record. The state trial court had determined, when Cole was tried in 1971, that the evidence created issues of fact for resolution by the jury both as to heat-of-passion and as to self-defense. Where the question of guilt or innocence, or the question of degree of guilt, hangs on the jury's resolution of an issue of fact, and there is evidence permitting a finding either way, it is inescapable that prejudice to the accused occurs when the jury is instructed that, on the crucial issue, it is to find against the defendant unless he carries the burden, whereas the correct instruction would have placed the burden on the prosecution to prove the fact beyond a reasonable doubt. The facts of the case were ones which the trial judge properly decided would sustain a finding of self-defense or of heat-of-passion. The erroneous placing of the burden was of necessity prejudicial.

---

appeal to the state appellate courts on the federal constitutional issue was apparent in Noia's case, as it was in Cole's. Two co-defendants of Noia, also convicted solely on the strength of coerced confessions, exhausted, without success, the appellate avenues. *See* 372 U.S. at 395, n.1, 83 S.Ct. at 825 n.1. An appeal by Noia would not merely have been futile; it could have had harmful consequences, just as raising the federal constitutional issue by Cole at the time of his appeal could have had harmful consequences. *See* 372 U.S. 439–440, 83 S.Ct. at 849. *Fay held* that "Federal courts have *power* (emphasis by the Court) under the federal habeas statute to grant relief despite the applicant's failure to have pursued *a state remedy not available to him at the time he applies* (emphasis supplied) . . . .. Noia's failure to appeal cannot under the circumstances be deemed an intelligent and understanding waiver of his right to appeal such as to justify the withholding of federal habeas corpus relief." 372 U.S. at 398–99, 83

S.Ct. at 827. Disregarding the *Fay dictum* entirely, and relying solely on its *holding*, one is compelled to conclude that there was no waiver by Cole through failure to assert on appeal the federal constitutional issue neither conceived nor born at the time his appeal was taken and argued, especially in light of the clear state precedents squarely against him.

**27.** *State v. Jackson*, 284 N.C. 383, 200 S.E.2d 596 (1973), *reh. den.*, 293 N.C. 260, 247 S.E.2d 234 (1977); *State v. Crowder*, 285 N.C. 42, 203 S.E.2d 38 (1974), *reh. den.*, 293 N.C. 259, 243 S.E.2d 143 (1977); *State v. Brower*, 289 N.C. 644, 224 S.E.2d 551 (1976), *reh. den.*, 293 N.C. 259, 243 S.E.2d 143 (1977); *State v. Riddick*, 291 N.C. 399, 230 S.E.2d 506 (1976), *reh. den.*, 293 N.C. 261, 247 S.E.2d 234 (1977); *State v. May*, 292 N.C. 644, 235 S.E.2d 178 (1977), *reh. den.*, 293 N.C. 261, 247 S.E.2d 234 (1977).

**28.** See fns. 22 and 23, *supra.*

*Wynn v. Mahoney*, 600 F.2d 448, 450 (4th Cir. 1979).[29]

## IV.

To recapitulate, even if one might sympathize with the view that *Mullaney* was wrongly decided,[30] or should at least be restricted in its retroactivity to cases reaching the federal courts on direct appeal, and hence before complete finality of disposition in state courts, it would be error, in view of the latest expressions of the Supreme Court on those points, to deny to Cole the right to raise a point incontestably in his favor on the merits because he did not protect it by objection at trial or designation on appeal at a time when the point did not exist, at a time, indeed, when applicable law unambiguously denied any validity to the point. It is wrong:

1. In effect to overrule *Mullaney*;

2. In effect to restrict the retroactivity of *Mullaney* to cases not yet finally disposed of by direct appeal at the time it was decided;

3. To apply a contemporaneous objection rule to bar Cole from raising the point that *Mullaney* was applicable to his case on the untenable grounds that he or his counsel was somehow at fault for not doing what the Supreme Court, itself, in *Hankerson* f.n.8 has acknowledged was not to be expected from the most qualified of lawyers.

I, therefore, would affirm the judgment of the district court.

HAYNSWORTH, C. J., and WINTER, J., have authorized me to state that they concur in the dissent.

HAYNSWORTH, Chief Judge, dissenting:

I concur in the dissenting opinion of MURNAGHAN, J.

While my agreement with all that Judge Murnaghan has written is unqualified, were I acting alone I would be inclined toward a rather simplistic approach to this case. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), may have been substantially

---

**29.** No case decided by this Circuit contradicts the position I have taken. *Crowell v. Zahradnick*, 571 F.2d 1257 (4th Cir. 1977), concerned a claim that inculpatory statements of the petitioner had been wrongfully admitted in his state trial. The contention raised, as *Sykes* and *Francis* raised, a point on which a factual determination was necessary (*i. e.*, whether the statements were voluntary). No *Mullaney* contention, the validity of which would be apparent without any evidentiary investigation, was made. *Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir. 1978), dealt with burden of proof on issues of self-defense and provocation under Virginia law. However, the court determined that the Virginia statute fell within the purview of *Patterson* not of *Mullaney*. The law of North Carolina, whence Cole's case comes, on the other hand, concededly ran afoul of *Mullaney*. With respect to one *habeas corpus* petitioner, the court in *Frazier* assumed that the jury instruction placing the burden upon the defendant on the issue of provocation did offend the Constitution. However, it also determined that, independently of the Constitution, purely as a matter of Virginia law, as it was at the time of trial, the instruction was improper. On that basis, the court was justified in finding that there was waiver through failure to object. Had the defendant objected to the instruction, it would, in view of the *then prevalent* Virginia law, have been corrected. The situation, there-

fore, was in stark contrast to Cole's, since an objection on Cole's behalf would have been on grounds directly contrary to then prevalent North Carolina law. *Wynn v. Mahoney*, 600 F.2d 448 (4th Cir. 1979), granted *habeas corpus* relief to a prisoner where the charge to the jury had violated the principle of *Mullaney*. *Gore v. Leeke*, 605 F.2d 741 (4th Cir. 1979), dealt with an isolated excerpt from a charge which, standing alone, was erroneous with respect to the issue of abandonment of the criminal activity by a defendant during the course of a felony murder. The court determined that, read as a whole, the jury instructions corrected the error. Furthermore, the isolated portion of the charge was plainly wrong under prevalent state law and a timely objection would have led the state judge to clarify the instructions and eliminate any possibility of error. So a holding that there was waiver made sense. Again the contrast to Cole's case is great, for the judge at Cole's trial would not have changed his instructions had Cole raised the *Mullaney* point nor would the North Carolina Supreme Court have ruled otherwise than it did if the point had been preserved on appeal.

**30.** *See* Allen, *supra*, n.5, 76 Mich.L.Rev. 30, 63 (1977) ("*Mullaney* extended *Winship's* due process theory further than careful analysis could sustain . . . .").

confined to its facts, but it has not been overruled. Unless the Supreme Court should overrule *Fay*, we should find its precise holding binding upon us.

The holding in *Fay* was that a failure of a state prisoner to present his federal constitutional claim on appeal in the state court system does not foreclose the later assertion of a federal habeas corpus claim unless the failure to assert the claim on appeal in the state court system is found to have been a deliberate by-pass of that avenue of relief. *Fay*'s holding squarely fits this case, for federal relief is said to be foreclosed by Cole's failure to present the claim on appeal to the North Carolina Supreme Court.

At the time of Cole's appeal, there was nothing in the decided cases to support the federal claim. The fact that it was not presented to the North Carolina Supreme Court at that time cannot be regarded as a deliberate by-pass of the state court remedy. Thus *Fay*'s holding should require affirmance here.