STATE OF NORTH CAROLINA v. JAMES LEWIS COLE

No. 126

(Filed 28 January 1972)

**1. Homicide § 21— first degree murder — sufficiency of evidence**

The State's evidence was sufficient to be submitted to the jury as to defendant's guilt of first degree murder or lesser included offenses where it tended to show that defendant provoked an altercation with decedent's two sisters in a club near the grocery store where decedent worked, that decedent went to the club, exchanged angry words with defendant, and returned to the grocery store, that defendant later entered the grocery store and swung at decedent with an open knife, and that defendant acquired possession of decedent's pistol in a scuffle with decedent and fatally shot him.

**2. Homicide § 26— erroneous definition of second degree murder — correction by court**

The trial court's erroneous instruction that second degree murder is the unlawful killing of a human being *"without* malice and without premeditation and deliberation" was rendered harmless when the court immediately followed the erroneous instruction with the statement that malice is a necessary element of second degree murder and at the conclusion of the charge again called the jury's attention to the corrected definition of second degree murder.

**3. Homicide § 28— instructions on self-defense**

In this homicide prosecution, the trial court's instructions were sufficient to give defendant the benefit of his claim of self-defense.

APPEAL by defendant from *Clark, J.,* "Second May, 1971 Regular Criminal Session of WAKE County Superior Court."

In this criminal prosecution the defendant, by grand jury indictment, was charged with the first degree murder of Alex Gray Bryant. The killing occurred in Wake County on January

23, 1971. Upon arraignment, the defendant, through privately employed counsel, moved to quash the indictment. When the motion was overruled, the defendant entered a plea of not guilty. A jury of twelve and one alternate was selected and passed without objection.

The State's evidence is here summarized except when quoted. On and prior to January 23, 1971, the deceased, Alex Gray Bryant, was employed in the Price Is Right Grocery Store at the corner of Fayetteville and Walnut Streets in Raleigh. Entry into the store was from Fayetteville Street. In the same building, but with the entrance on Walnut Street, was located the Torch Club which is described in the evidence as " . . . (A) place where people dance and drink beer."

A few minutes before nine o'clock on the evening of January 23, 1971, Rozelle Bryant and Mozelle Bryant, sisters of the deceased, entered the Torch Club and sat down at a table. The defendant, who had been drinking throughout the afternoon, stopped at the table and provoked a difficulty with Rozelle Bryant. Rozelle accused him of drinking and he said, "You damn right." A witness said he saw, " . . . Rozelle hit Cole over the head with a chair. She hit him because he was going after her."

Further evidence disclosed that the deceased, Alex Gray Bryant, came from the grocery store to the Torch Club wearing his apron. He and the defendant engaged in a somewhat angry discussion about the trouble between the defendant and the Bryant sisters. However, the deceased returned to the grocery store where Cole appeared shortly thereafter. Charles Dolby testified: "The next thing I knew, James Cole came in with a knife and said, 'Don't nobody f . . . over Cole.' At that time he went into Alex Bryant with a knife. I saw him swing and Bryant went down. I heard a gun go off and Bryant slumped over. . . . After the shot was fired and Alex Bryant fell, Cole went on up the street . . . at which time I heard some more shots."

Dr. Edwards, a pathologist, testified he performed a postmortem on the deceased. He found two small lacerations in the chest, small abrasions on the left arm, and a gunshot wound in the right posterior neck area. Dr. Edwards gave as his opinion that death resulted from the gunshot wound. Dr. Ed-

wards removed a 25 caliber bullet from the body. Ballistics tests disclosed the bullet removed from the body of the deceased had been fired from the pistol taken from the defendant at the time of his arrest.

At the close of the State's evidence the defendant moved to dismiss all charges embraced within the indictment. The court denied the motion. The defendant excepted.

The defendant testified he was on weekend leave from Wake Advancement Training Center. On January 23, 1971, he had been drinking prior to his difficulty with the Bryant girls at the Torch Club. During the difficulty he knocked one of the girls down because she hit him with a chair. He testified the deceased appeared at the Club and pointed a pistol at him. However, the difficulty did not extend beyond words. The deceased went back to work. Later the defendant went to the grocery store, according to his statement, to secure a Band-Aid for his injury. After the defendant entered the grocery store, the dispute with the deceased was renewed. Here is the defendant's version as taken from the record of his testimony.

"He was still arguing with me and I said 'Well, if you want to do me a job, now is the time.'

I swung all the way around with my knife in my hand. . . . (H)e started fumbling and came out with a gun. I grabbed his wrist and we started struggling. I don't know whether I was stabbing or not. . . . He was trying to cock the gun with his left hand . . . . As soon as he got it cocked, he took his left hand and pushed it down in my face. When he did I pushed up and the gun went off.

* * * * * * *

I picked the gun up out of Alex's hand after he was shot and left . . . . "

On cross-examination, defendant admitted he had been sentenced for various assaults, including assault with intent to kill a police officer. One of his witnesses testified the deceased kept a pistol in a holster under his apron while he was at work. Another witness for the defendant gave testimony tending in part to corroborate the defendant with respect to the

scuffle over the pistol at the time the fatal shot was fired. The witness was a friend of the defendant and was on leave from a different prison camp where he was serving a sentence for possession of heroin. Another witness said he had seen the pistol, or one similar, in possession of the deceased. Another witness testified the deceased carried a pistol at night.

At the close of all the evidence the defendant renewed his motion that all charges embraced within the bill of indictment be dismissed. The motion was again overruled.

At the conclusion of the arguments and the court's charge the thirteenth juror was excused. The jury consisting of twelve, after deliberating, agreed upon and returned into court a verdict finding the defendant guilty of murder in the second degree. From the sentence of imprisonment for not less than twenty nor more than thirty years, he appealed.

*Robert Morgan, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the State.*

*Sanford, Cannon, Adams & McCullough by John H. Parker for defendant appellant.*

HIGGINS, Justice.

By brief, the defendant presents four questions for review: I. Did the trial court err in its instructions on second degree murder and appellant's defenses? II. Did the trial court err in denying the defendant's motion for judgment of nonsuit? III. Did the trial court err in denying the defendant's motion for a new trial? IV. Did the trial court err in signing and entering the judgment as set out in the record? Obviously Questions III and IV are formal. Answers to them depend upon the answers to Questions I and II.

In logical sequence the first question is the sufficiency of the evidence to go to the jury on the charge of murder in the first degree, or on any of the lesser included offenses. On the question of sufficiency, the evidence must be viewed in the light most favorable to the State. Any inconsistencies or contradictions must be resolved in favor of the State. *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858; *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

The evidence disclosed the defendant first picked a fight with Mozelle and Rozelle Bryant who were sitting at a table in the Torch Club. He first assaulted one of the girls. The other hit him with a chair. During the commotion which followed, Alex Bryant appeared at the Club wearing his work apron. The evidence is silent, but it appears probable someone notified him of the difficulty involving his sisters. Angry words but no blows were exchanged between Cole and Bryant. The latter returned to his work.

Within a few minutes the defendant appeared at the grocery store. On entering, he made a vulgar announcement not repeated here. The State contends the defendant entered the grocery store for a further confrontation. The defendant contended he entered the store in search of a Band-Aid to stop the bleeding from his head wound which was inflicted by Rozelle's chair. He admitted, however, he opened and concealed his knife before entering the store. The defendant further contended he and the deceased were scuffling over the deceased's pistol at the time it was discharged.

[1] The defendant's contentions are contradicted by the evidence and by his conduct. The opening and concealing of his knife and the vulgar announcement were consistent with a search for trouble rather than a search for a Band-Aid. The entry of the bullet from the rear of the neck would be a difficult and unusual result from a scuffle over the pistol while the parties were facing each other. The fact the pistol was in the defendant's possession when he left the scene, indicates that perhaps he acquired possession in the scuffle and then fired the fatal shot. At all events, the evidence was sufficient to go to the jury on the charge of murder and the lesser included offenses. The motion to dismiss was properly overruled. *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541; *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447; *State v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638; *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889.

[2] The first objection to the charge involves the following: "Second degree murder is the unlawful killing of a human being *without* (emphasis added) malice and without premeditation and deliberation." *Malice is a* necessary element of murder in the second degree. If unexplained, this error in the charge would require a new trial since the jury found murder in the

second degree. However, the court immediately followed the erroneous instruction with the statement malice is a necessary element of murder in the second degree. At the conclusion of the charge, the court gave this additional instruction:

"I did make one mistake at the beginning which I corrected but I want to call that to your attention so there won't be any question about it. I believe, it was when I first began to state to you what second degree murder was. I again repeat . . . that second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation; and that manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation."

The corrected instruction was sufficient to remove all harmful effect of the first definition of murder in the second degree. The erroneous definition was a slip of the tongue *(lapsus linguae)* and amply corrected, removing any harmful effect. *State v. Sanders,* 280 N.C. 81, 185 S.E. 2d 158.

[3] The defendant objected to the charge on the ground he was not given the benefit of his claim of self-defense. The court gave the following final instruction on self-defense:

". . . (B)ut if you find that the deceased Bryant was the aggressor and initially made a murderous assault upon the defendant with a pistol and the defendant in defending himself from such assault struggled for the pistol during which struggle the gun fired, whether in the hand of the deceased or whether in the hand of the defendant, resulting in the wounding and death of the deceased Bryant, then the defendant would not be guilty of any offense and your verdict would be not guilty."

The jury was fully warranted in finding the defendant guilty of murder in the second degree. *State v. Jennings, supra; State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328; *State v. Redfern,* 246 N.C. 293, 98 S.E. 2d 322; *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322.

The motion in arrest of judgment was properly denied. In the trial, verdict, and sentence we find

No error.