STATE OF NORTH CAROLINA v. GLENN WOOD FORD

No. 59

(Filed 20 April 1979)

1. **Bills of Discovery § 6; Constitutional Law § 30— no statutory right to discover criminal record of witness**

   North Carolina law does not grant a criminal defendant the right to discover the criminal record of a State's witness.

2. **Constitutional Law § 30— failure to disclose criminal record of witness—no denial of due process**

   Defendant was not denied due process by the prosecutor's failure to disclose information about prior convictions and misconduct of a State's witness where defendant failed to show (1) that the witness in fact had a significant record of degrading or criminal conduct; (2) that the State knew of such conduct by its witness and withheld such information; and (3) that its disclosure considered in the light of all the evidence would have created a reasonable doubt of his guilt which would not otherwise exist.

3. **Homicide § 21.7— second degree murder—sufficiency of evidence**

   The State's evidence was sufficient for the jury in a prosecution for second degree murder where it tended to show that a witness intervened at a party to prevent a fight between defendant and the victim; a few minutes later, two other witnesses saw defendant strike the drunken victim, who immediately slumped over an automobile; when the first witness went to investigate, he found the victim slumped against the car and defendant standing over him with an open knife in his hand; defendant told the witness on the

way to the hospital that he had cut the victim twice; and after it became apparent that the victim's condition was serious, defendant told the witness, "Look, man, don't say nothing."

**4. Criminal Law § 175.2— denial of recess to locate witness**

The trial judge did not abuse his discretion in the denial of defendant's motion for a recess to locate an allegedly newly discovered witness.

**5. Homicide § 30.2— second degree murder case—failure to submit voluntary manslaughter**

The trial court in a second degree murder case did not err in failing to instruct the jury on the lesser included offense of voluntary manslaughter where all the evidence tended to show that the person who stabbed the victim intentionally assaulted him with a deadly weapon, the use of which proximately caused his death; there was no evidence tending to show a killing in the heat of passion or the use of excessive force in self-defense; and defendant's evidence was to the effect that someone else assaulted and killed the victim.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by the defendant pursuant to G.S. 7A-27(a) from *Seay, J.*, 5 December 1977 Criminal Session of the Superior Court of GUILFORD, docketed and argued as Case No. 29 at the Fall Term 1978.

Defendant, charged with the murder of Robert J. Enoch in an indictment drawn under G.S. 15-144, was tried for murder in the second degree. The State's evidence tended to show:

On the evening of 17 June 1977 Robert Enoch (the deceased), Larry Lee Smith (the prosecuting witness), and Glenn Ford (the defendant) went in Smith's car to The Paradise, "a drive-in place." There they drank beer and defendant "tried to talk to Connie Boykin." She joined the group, and the four went to a party on Clapp Street, where 30-40 persons had gathered. Smith testified that en route to the party defendant appeared to be "mad" because he was sitting in the front seat and Enoch was in the back with Connie Boykin.

According to Smith's further testimony, after they arrived at the party, the four "sort of separated and Connie got to arguing with some guys." Enoch, who had been drinking and was "really drunk," stepped between the guys and said something to the effect, "Don't you be arguing with my woman." When defendant heard this imperative he said, "That's not even Robert's woman."

State v. Ford

When defendant and Enoch then began arguing with each other, Smith left his car, got in between the two and said, "You all cut that out because we are supposed to be together." This stopped the arguing and Smith got under the wheel. Enoch started to get in beside him but, for some reason, walked away.

After waiting two or three minutes for Enoch and defendant to come back, Smith went to look for them. Two or three car lengths down the street he saw Enoch slumped down against the car. Defendant was standing in front of Enoch and no one else was around. When Smith asked defendant what had happened to Enoch, defendant said he had hit him. Smith saw blood around Enoch's teeth and observed that defendant was holding an open knife with a blade three or four inches long. He "sort of" pushed him back away from Enoch and said, "What are you doing, man?" Smith then picked Enoch up under his arms and dragged him back to the car, where defendant helped put him in the back seat.

When Smith stated his intention to take Enoch to his home "to let him sleep it off," defendant told Smith he'd better take him to the hospital because he had cut Enoch twice. On the way to the hospital defendant kept insisting that Smith drive faster; that he should "not worry about the red lights and things." In the emergency room of the Moses Cone Hospital where they remained several hours, defendant said to Smith, "Look man, don't say nothing." Sometime before 12:30 a.m. on June 18th Enoch died from the stab wound in his chest. He had also been stabbed in the back, but the pathologist who performed an autopsy testified that this cut was not in itself a fatal wound.

From the hospital Smith and defendant were taken by the police "down to the Homicide Squad," where they remained about two hours. However, neither Smith nor defendant told the police anything at that time. The two left the police station in Smith's car and, while Smith was driving defendant to his mother's house, defendant reached back and pulled a knife from the back seat. Smith told defendant the police had searched the car and he didn't understand how they had missed the knife. As they drove along Smith asked defendant if he didn't "feel anything" and he said, "I'm just sorry it happened that way."

During the next two days, June 18th and 19th, Smith said the fact that defendant had stabbed Enoch and the police didn't know

who did it, plus the fact that defendant was the brother of his girl friend, Hannah Rose Ford, "was messing up his head and he didn't know how to deal with it." During that time Smith sought the advice of several friends, including his ex-wife Jacquelin Smith and Larry Laverne Jones. (Inter alia, Jacquelin said she told Smith that if she were he, she would leave.) For the purpose of corroborating Smith's testimony Larry Laverne Jones and Jacquelin Smith each testified that Smith had told him the defendant had stabbed Robert Enoch.

Connie Boykin and Charles Lee Williams, who were also at the party when Enoch was stabbed, testified that they saw Enoch slump over after defendant hit him in the back at a time when nobody else was around those two.

The defendant himself did not testify, but he called witnesses whose testimony tended to show:

Kenneth Eugene Street was among those present at the party on Clapp Street on 17 June 1977. He testified that shortly after 11:10 p.m. he saw the prosecuting witness Smith come from the passenger side of his car and go out into the street where Enoch was standing. When he got to Enoch, Smith hit him with a knife which he had in his right hand. At that time defendant Ford was leaning on a Plymouth, his back to the street. When Street saw what had happened he ran back to his car, put his two sisters inside and went to see about his girl friend. He then returned to the scene of the stabbing, where he observed Enoch on his knees between Smith's legs and defendant still leaning on the Plymouth. "Larry Smith hollered over to Glenn and told him to help him put Robert Enoch in the car. It took Glenn a few minutes to get adjusted to what had happened and he helped Larry put him in the car, and they stood there about five minutes arguing about where to take him . . . and after they argued they entered the car and left off Clapp Street." Street also testified that he did not see defendant take part in any of the arguments at the party and that he did not see defendant have a knife or make any aggressive movements toward Enoch.

Alice Faye Ford, sister of defendant, testified that in the summer of 1976 Enoch and her sister, Hannah Rose, were living together. At the time Enoch was stabbed, however, Hannah Rose and Smith were going together. In May of 1977 Smith "busted

Hannah Rose's lip and gave her a black eye" because he found her, Enoch, and Alice Faye drinking together in the latter's home. On cross-examination Smith acknowledged "that Hannah Rose went with Robert Enoch" before she started going with him, but he insisted that he and Enoch had "never changed no words over Hannah Rose. Me and Robert was friends." At the time of the trial Smith said he had "gone with Hannah Rose about a year and one-half and they had been living together"; that they had only discussed what happened on the night of 17 June 1977 "once or twice"; that they "just didn't talk about it with each other."

The jury found defendant guilty of second degree murder and he appealed a sentence of life imprisonment.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Isham B. Hudson, Jr., for the State.*

*Richard W. Gabriel for defendant.*

SHARP, Chief Justice.

Defendant's first assignment of error is that the court's denial of his motion "for disclosure of impeaching information" constituted a denial of his constitutional rights of due process. In this motion defendant requested that the State be ordered to disclose (1) all prosecutions, investigations or possible prosecutions which had been brought or which were pending against the State's prosecuting witness Larry Lee Smith; (2) "all records and information revealing felony convictions attributed to this witness"; and (3) "all records and information showing prior misconduct or bad acts committed by this witness."

[1] We note first that North Carolina law does not grant defendant the right to discover the criminal record of a State's witness. This right did not exist at common law and G.S. 15A-903 does not grant the defendant the right to discover the names, addresses, or criminal records of the State's witnesses. *See State v. Smith,* 291 N.C. 505, 523, 231 S.E. 2d 663, 674-5 (1976). The only issue, therefore, is whether the information which defendant sought from the prosecution was of such significance that the prosecutor's failure to disclose it resulted in the denial of the defendant's due process right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 49 L.Ed. 2d 342, 96 S.Ct. 2392 (1976). The answer is most certainly *No.*

[2] To establish a denial of due process defendant would have had to show (1) that Smith *had* a significant record of degrading or criminal conduct; (2) that the impeaching information sought was withheld by the prosecution; and (3) that its disclosure considered in light of all the evidence would have created a reasonable doubt of his guilt which would not otherwise exist. *United States v. Agurs, supra* at 112, 49 L.Ed. 2d at 354-55; 96 S.Ct. at 2401-2. In this case, the defendant failed to show that the State knew of any criminal convictions against its witness Smith or that Smith, in fact, had any criminal record. Indeed, during his cross-examination of Smith defense counsel did not once ask him if he had ever been convicted of a violation of the law. Such an inquiry of course, would have been a proper subject for cross-examination. *State v. Foster*, 293 N.C. 674, 684-685, 239 S.E. 2d 449, 456-7 (1977). Defendant's first assignment of error is overruled.

[3] Defendant's eighth assignment is that the court erred in overruling defendant's motion for judgment as of nonsuit made at the close of all the evidence. In his brief defendant "maintains" that no evidence in this case "can reasonably be construed to show an intentional killing with a deadly weapon." This assertion sets at naught the testimony of Larry Lee Smith, Connie Boykin, and Charles Lee Williams, which tended to show:

En route from The Paradise to the Clapp-Street party defendant made an extremely obscene remark about the deceased Enoch, who was then sitting in the back seat of Smith's automobile with Connie Boykin. At the party defendant again expressed resentment toward Enoch when he ordered "a guy" who was disputing with Connie "not to be arguing with my woman." In consequence, Smith intervened to prevent a fight between Enoch and defendant. A few minutes later, Boykin and Williams saw defendant strike the drunken Enoch, who immediately slumped over a Plymouth automobile. When Smith went to investigate he found Enoch slumped against the car and defendant standing in front of him. In his hand defendant held an open knife with a blade three or four inches long. Defendant, who helped Smith put the bleeding Enoch in Smith's car, urged him to drive fast to the hospital because, he said, he had cut Enoch twice. In the emergency room, after it became apparent that Enoch's condition was serious, defendant said to Smith, "Look, man, don't say nothing."

This evidence was clearly sufficient to take the issue of defendant's guilt of second degree murder to the jury. The credibility of the State's and defendant's witnesses was for the jury and their decision was to accept the State's version of the knifing on Clapp Street. Defendant's eighth assignment of error is overruled.

[4] We next examine defendant's 13th assignment of error, that the trial judge erred in denying defendant's motion for a recess to locate an allegedly newly discovered witness. Just prior to the judge's charge, after defendant had rested his case, he requested the court to grant a recess for the purpose of allowing him to locate Ricky Johnson. Defense counsel said that Ricky Johnson "is alleged to have been the occupant of the apartment on Clapp Street at which the party was held and in which the defense is informed was an eyewitness to this matter."

A motion to recess is addressed to the sound discretion of the trial judge, and nothing in the record of the case suggests that the judge abused his discretion in denying defendant's motion. The record shows that the defense attorney had been appointed six months before the trial. No subpoena had been issued for Ricky Johnson, whose presence at the party was well known to defendant's main witness, Kenneth Eugene Street, who testified that it was Ricky who broke up Connie Boykin's first argument after she arrived at the party. He did not, however, mention his presence in the street when he testified he saw Smith stab Enoch. It is hardly plausible that Street would have overlooked a witness who would have corroborated his testimony had one been available. Assignment No. 13 is overruled.

[5] Defendant's assignment No. 14 challenges the court's failure to instruct the jury on the lesser included offense of voluntary manslaughter.

A trial judge's duty to instruct the jury as to a lesser included offense of the crime charged arises only when there is evidence from which the jury could find that the defendant committed the lesser offense. When there is no such evidence the court should refuse to charge on the unsupported lesser offense. *State v. Hampton*, 294 N.C. 242, 239 S.E. 2d 835 (1978). In this case all the evidence tends to show that the person who stabbed Enoch intentionally assaulted him with a deadly weapon, the use

of which proximately caused his death. This evidence was suffi-
cient to raise the inference that the killing was unlawful and done
with malice. *State v. Berry*, 295 N.C. 534, 246 S.E. 2d 758 (1978);
*State v. Price*, 271 N.C. 521, 157 S.E. 2d 127 (1967). The record is
devoid of any evidence tending to show a killing in the heat of
passion or the use of excessive force in the exercise of the right
of self-defense. Defendant's evidence was to the effect that he
never assaulted the deceased, but that the witness, Larry Lee
Smith, was the killer. This evidence did not tend to raise the
issue of malice or unlawfulness but to show that defendant was
not the killer and thus not guilty of any crime. We hold,
therefore, that there was no evidence to support the lesser includ-
ed offense of manslaughter. *See State v. Hampton, supra.*

Defendant's remaining assignments disclose no prejudicial er-
ror and merit no discussion. We find no cause to disturb the
jury's verdict.

No error.

Justice BROCK did not participate in the consideration or
decision of this case.