STATE OF NORTH CAROLINA v. JOSEPH FERRELL

No. 66

(Filed 6 May 1980)

1. **Criminal Law § 146— sentence of ten years to life imprisonment—no appeal directly to Supreme Court**

     A sentence of imprisonment of from ten years to life is not a sentence of "imprisonment for life" within the meaning of G.S. 7A-27(a) so as to create a direct appeal of right to the Supreme Court from the superior court, since the term "imprisonment for life" as used in G.S. 7A-27(a) means only a determinate life sentence and does not include an indeterminate sentence merely because the stated maximum is life imprisonment.

2. **Homicide § 26— second degree murder—instructions—choking victim "without malice"—prejudicial error**

     The trial court committed prejudicial error in instructing the jury that defendant would be guilty of second degree murder if he choked the victim "without malice" and proximately caused his death where the court's er-

roneous instruction went uncorrected, and the error was accentuated by the fact that it was in the court's final mandate to the jury.

**3. Homicide §§ 28.1, 30.2— second degree murder—erroneous failure to instruct on manslaughter, self-defense**

    The trial court in a prosecution for second degree murder by strangling the victim erred in failing to instruct on the lesser included offense of voluntary manslaughter and on the defense of self-defense where there was evidence that the victim had slapped at defendant and knocked his glasses off, that the two had argued just prior to the killing, and that the victim had a box cutter in his hand and struck the first blow, since there was evidence from which the jury could find that defendant lacked the malice necessary to sustain a second degree murder conviction because he acted in the heat of passion upon sudden provocation, and there was evidence from which the jury could find that the force defendant used was reasonable and constituted a complete defense or that it was unreasonable so as to reduce the crime to voluntary manslaughter.

APPEAL by defendant from the decision of the Court of Appeals, *Judge Martin (Robert M.)* dissenting, reported at 44 N.C. App. 374, 260 S.E. 2d 808 (1979), dismissing his appeal for the reason that writ of certiorari had been improvidently granted.

Defendant was charged in an indictment proper in form with the second-degree murder of Leslie William Royals. He entered a plea of not guilty.

At trial, evidence for the State tended to show that on 19 July 1978, at around 1:00 a.m., officers from the Goldsboro Police Department were called to the residence of the deceased Leslie William Royals to investigate a possible homicide. Upon arrival, they found the body of the deceased lying on a bed. The officers noted that there were numerous cuts and scratches around the victim's throat and ear. The bed and other furnishings were in disarray. A razor-type knife was found near the deceased's right hand. Dr. John Butts testified as a medical expert that in his opinion the cause of death was strangulation.

At the time of the initial investigation, there were numerous people in and about the residence of the deceased, and a man later identified as defendant was among the bystanders. Officer Andrew Jones testified that he learned defendant's name and that defendant was living with the deceased. He subsequently asked defendant to accompany him to the police station. At the station, defendant was informed of his rights and signed a written

waiver form. He was not under arrest at this time. During this initial visit to the police station on 19 July 1978, defendant gave at least two statements which were offered into evidence by the State. The first of the statements was to the effect that defendant left the residence of the deceased at around 7:00 p.m. on 18 July 1978. He returned at approximately 1:30 a.m on 19 July 1978 and, at that time, discovered the body of the deceased. He immediately called the rescue squad.

In his second statement, defendant told Officer Edwin Bundy substantially the same story but added that, at the time he discovered deceased's body, he "had a spell" and did not know how long he was "out." He then stated that he "came to" and ran out to get help.

On 20 July 1978, defendant was picked up at the Goldsboro bus station and charged with the murder of deceased. He was taken to the police station and advised of his rights. After signing a written waiver of his rights, defendant made a third statement. In this statement, defendant said that when he arrived home around 1:00 a.m. on 19 July 1978, the deceased awoke and began arguing with him. According to defendant, the deceased slapped at him and had a box cutter in his hand. Defendant stated that the deceased "got mad and slapped me up beside of the head and knocked my glasses off and I remember pushing him and the next thing that I remember, I was on him on the bed and had my hand on his neck." Defendant further stated, "I must have had one of those spells at this point. . . . Bells rang in my head and I pushed him. . . ."

Defendant took the stand and testified in his own behalf. He denied killing deceased. He testified that on the evening of the killing he was getting dressed in his room and heard something fall on the floor. He saw someone running out, with "something gray all over their head." He then discovered deceased's body and called the rescue squad.

The jury returned a verdict of guilty of second-degree murder, and defendant was sentenced to a term of imprisonment of not less than ten years nor more than life.

After entry of judgment, the time for giving notice of appeal expired. Defendant petitioned the Court of Appeals for, and was

granted, a writ of certiorari. The Court of Appeals, in an opinion by Judge Hedrick, Judge Wells concurring, dismissed the appeal on the ground that the court lacked jurisdiction since the sentence imposed included a life sentence and was, therefore, directly appealable only to this Court. Judge Martin (Robert M.) dissented without opinion, and defendant appealed to this Court pursuant to G.S. 7A-30(2). Although defendant appealed only from the dismissal of his case, in the interests of justice and in order to avoid needless circuity, we elected to treat his notice of appeal as a motion, pursuant to G.S. 7A-31, to bypass the Court of Appeals and allowed that motion.

*Rufus L. Edmisten, Attorney General, by Elisha H. Bunting, Jr., Assistant Attorney General, for the State.*

*H. Bruce Hulse, Jr., for defendant.*

BRANCH, Chief Justice.

[1] The threshold question presented for review in this case is whether a sentence of imprisonment for ten years to life is a sentence of "imprisonment for life" within the meaning of G.S. 7A-27(a) so as to create a direct appeal of right to this Court from the superior court. In dismissing the appeal for lack of jurisdiction, the Court of Appeals reasoned that a sentence of imprisonment of ten years to life was essentially a life sentence and therefore appeal lay directly to this Court from the trial court. We disagree.

G.S. 7A-27 governs appeals of right from the trial division and provides in pertinent part as follows:

> (a) From a judgment of a superior court which includes a sentence of death or imprisonment for life, unless the judgment was based on a plea of guilty or nolo contendre, appeal lies of right directly to the Supreme Court.

The primary function of a court in construing a statute is to ascertain the intent of the legislature. *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975). In ascertaining this intent, a court looks to the language and spirit of the statute and what it sought to accomplish. *Stevenson v. Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). It is also relevant to look to the history of the legislation

State v. Ferrell

and the circumstances surrounding its enactment. *Sale v. Johnson*, 258 N.C. 749, 129 S.E. 2d 465 (1963).

In 1967 the legislature created the present appellate division, consisting of the Supreme Court and the Court of Appeals. 1967 N.C. Sess. Laws c. 108, s. 1. Prior to that time, the appellate division consisted solely of the Supreme Court. 1965 N.C. Sess. Laws c. 310, s. 1. According to the *Report of the Courts Commission*, a primary goal of creating two branches within the appellate division was to alleviate the heavy case load which had burdened the Supreme Court until that time. *Report of the Courts Commission* 14 (1967). The Commission recommended to the legislature that every case, civil and criminal, should be appealable initially to the Court of Appeals. The Commission, however, noted that there should be an exception to the "basic arrangement that all cases be appealed directly to the Court of Appeals in the first instance," and that the exception would be in "cases in which a sentence of death or life is imposed." As the authors of the report pointed out, "[i]t is important to have as a part of the organic law of the State the absolute right of a person under these *ultimate* sentences to appeal directly and in the first instance to the Supreme Court." *Id.* at 17. (Emphasis added.)

While the *Report of the Courts Commission* does not address the specific problem which is before us, we think it is abundantly clear that the Commission intended to recommend to the legislature that direct appellate review by this Court be confined to a "strictly limited category of 'important' cases . . . ." *Id.* at 4[1]. We need not dwell on the reasons why cases involving sentences of death and of life imprisonment constitute "important cases." Those reasons are self-evident. Suffice it to say that the sentence imposed in this case is for imprisonment for a term of ten years to life and is thus an indeterminate sentence. *See People v. Rivas*, 85 Cal. App. 2d 540, 193 P. 2d 151 (1948). In light of what we perceive to be the purpose of G.S. 7A-27 in permitting only a limited number of direct appeals to this Court from the trial division, we do not think that the term "imprisonment for life" encompasses a sentence which is indeterminate. An indeterminate sentence, which, as here, merely states life imprisonment as a

---

1. The 1967 legislation creating the appellate division meticulously follows the recommendations of the Courts Commission.

maximum, simply does not rise to the level of importance or seriousness which we think the drafters of G.S. 7A-27(a) intended for cases warranting a special direct appeal to this Court from the trial division.

We therefore hold that the term "imprisonment for life" as it is used in G.S. 7A-27(a) means only a determinate life sentence and does not include an indeterminate sentence merely because the stated maximum is a life term. *See People v. Rivas, supra; Maddox v. People,* 178 Colo. 366, 497 P. 2d 1263 (1972); *Jaramillo v. District Court,* 173 Colo. 459, 480 P. 2d 841 (1971). *But see State ex rel. Corbin v. Court of Appeals,* 103 Ariz. 315, 441 P. 2d 544 (1968). Thus, since defendant was not sentenced to "imprisonment for life" as that term is used in G.S. 7A-27(a), his appeal was properly within the jurisdiction of the Court of Appeals.

[2]    Defendant assigns as error the following portion of the trial court's charge to the jury:

> So with regard to this charge of Second Degree Murder. If the State of North Carolina has satisfied you from the evidence and beyond a reasonable doubt that on or about the 19th day of July, 1978, Joseph Ferrell choked Leslie William Royals with his hands; that he did so *without malice* and without justification or excuse and thereby proximately caused the death of Leslie William Royals; it would be your duty to return a verdict of guilty of Second Degree Murder. (Emphasis added.)

Defendant contends that the instruction is contrary to the law of North Carolina and that he is entitled to a new trial.

The State contends that the trial judge instructed correctly on the requirements of second-degree murder just prior to the erroneous portion set out above. Thus, the State maintains that the charge when read as a whole is correct, relying on the case of *State v. Cole,* 280 N.C. 398, 185 S.E. 2d 833 (1972). In *Cole,* the trial judge defined second-degree murder as "the unlawful killing of a human being *without* (emphasis added) malice. . . ." *Id.* at 402, 185 S.E. 2d at 836. This Court found no error but did so specifically for the reason that the trial court corrected its error and "immediately followed the erroneous instruction with the statement malice is a necessary element of murder in the second degree."

*Id.* at 403, 185 S.E. 2d at 836. The Court noted explicitly that, if the error had not been corrected, a new trial would have been required.

Unlike *Cole*, the error in the court's instruction in this case went uncorrected. Furthermore, the error was accentuated by the fact that it was in the judge's final mandate to the jury. Defendant is therefore entitled to a new trial.

[3] Defendant also assigns as error the failure of the judge to instruct on the lesser included offense of voluntary manslaughter and on self-defense. The State contends that there was insufficient evidence of either to warrant an instruction to the jury.

It is the duty of the trial court to instruct on all substantial features of the case. *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974). If there is evidence from which the jury could find that the defendant committed a lesser included offense, the judge must charge on that lesser offense. *State v. Ford*, 297 N.C. 144, 254 S.E. 2d 14 (1979). Likewise, where there is competent evidence from which the jury could find that defendant acted in self-defense, the court must charge on that defense, even though there may be evidence to the contrary. *State v. Dooley, supra.*

In the case at bar, at least two of defendant's statements, offered into evidence by the State, indicated that he had "had a spell." In his third statement, he said that the deceased had slapped at him and had knocked his glasses off and that the two had argued just prior to the killing.

The unlawful killing of a human being under the influence of passion upon sudden provocation is voluntary manslaughter. *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971). There is evidence in this case from which a jury could find that defendant lacked the malice necessary to sustain a second-degree murder conviction because he acted in the heat of passion upon sudden provocation.

Further, the evidence that deceased had a box cutter in his hand and struck the first blow was sufficient to permit the jury to reasonably infer that defendant acted in self-defense. *See State v. Marsh*, 293 N.C. 353, 237 S.E. 2d 745 (1977). Thus, defendant was entitled under the facts of this case to have the jury determine, under proper instructions, whether the force he used was

reasonable and constituted a complete defense, or whether the force was unreasonable so as to reduce the crime to voluntary manslaughter. *State v. Rummage*, 280 N.C. 51, 185 S.E. 2d 221 (1971).

The trial court committed error prejudicial to defendant in failing to instruct on the lesser included offense of manslaughter and on the defense of self-defense. For the reasons set forth in this opinion, we hold that defendant is entitled to a new trial.

Since we are remanding the case for a new trial, we do not deem it necessary to address defendant's remaining assignments of error, inasmuch as the matters which gave rise to them probably will not recur on retrial.

The dismissal of the cause by the Court of Appeals is reversed, and for errors in the trial, the cause is remanded to the Wayne County Superior Court for a new trial.

Reversed and remanded.

Justices COPELAND and CARLTON took no part in the decision of this case.