STATE OF NORTH CAROLINA v. LARRY CARTER

No. 464A88

(Filed 7 February 1990)

1. **Criminal Law § 687 (NCI4th)— question to defendant— requested instruction for jury not to consider—no error in refusal to give**

   The trial court in a first degree murder prosecution did not abuse its discretion in refusing to give defendant's requested instruction that the jury should not consider a question the State asked defendant as to whether he had stated "that he would kill anyone for his friend Butch Jackson" because defendant denied making the statement and the State elicited no evidence to show that defendant made the statement since the trial court was not required to recapitulate the evidence, and the court's ruling was based upon its reasoned decision that the requested instruction might constitute an expression of opinion and that it was a proper subject matter for argument to the jury.

   **Am Jur 2d, Witnesses §§ 524, 527.**

2. **Criminal Law § 86.2 (NCI3d)— thirteen-year-old convictions— improper cross-examination of defendant—harmless error**

   The trial court in a first degree murder case erred in permitting the State to cross-examine defendant about two thirteen-year-old assault convictions pursuant to N.C.G.S. § 8C-1, Rule 609(b) because they involved the use of violence, since

a defendant's prior convictions are admissible under Rule 609 only to impeach his credibility and not to show his character, and this principle was violated by the trial court's conclusion that the convictions were more probative than prejudicial because they involved violence. However, the admission of this evidence was not prejudicial because there was no reasonable possibility that a different result would have been reached at trial had the court disallowed use of the prior assault convictions.

**Am Jur 2d, Witnesses §§ 582, 584.**

3. **Constitutional Law § 30 (NCI3d) — criminal records of state's witnesses — disclosure not required**

Defendant's statutory and due process rights were not violated when the trial court denied his motion to require the State to inform him of the criminal records of the prosecution witnesses. N.C.G.S. § 15A-903.

**Am Jur 2d, Depositions and Discovery §§ 45, 81.**

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Herring, J.*, at the 2 May 1988 Criminal Session of Superior Court, CUMBERLAND County. Heard in the Supreme Court 13 November 1989.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of murder in the first degree in a non-capital trial. The trial court imposed a sentence of life imprisonment. Of the three errors alleged, we find none prejudicial.

Evidence presented by the State tended to show that on Saturday evening, 6 June 1987, a number of patrons convened at the Royal Flush, a private club in Fayetteville. Among them were defendant and his wife and their friends, the Locklears and the Flints. Sometime after the band finished playing around 1:15 a.m., a fight broke out between two patrons. This drew the involvement

of a number of other patrons, and the resulting melee spilled outside onto a front porch and into the yard. At the heart of the scuffle were Pinkie Vinson and Charles Wood, who ended up wrestling with one another on the ground. Vinson's friends pulled him off Wood and restrained him against a wall in front of the building. Wood had moved off twenty to twenty-five feet toward the roadway. Defendant was seen to walk off the porch holding a lock-blade knife and to approach Wood. Linwood West, the guest of a club member, testified that he moved between the two, who were exchanging words, and spoke to defendant in an effort to cool them down.

Jerome Walker and Kenneth Holt, who were standing by the wall with Vinson, Vinson himself, and Linwood West all testified that defendant then approached Wood, reached around West, and slashed Wood's throat. A member of the band who watched the assault from the top of his van saw only the back of the man who wielded the knife, but he verified the identity of West as the man who stood between the assailant and the victim. Defendant was observed to turn away calmly, put something in the right front pocket of his pants, and then reenter the club. Wood died in an ambulance on the way to the hospital.

Defendant testified that after the last dance he went outside briefly, intending to look for his wife in their car, but was deterred by the original melee. He reentered the club through the front door and told his friends he wanted to leave. The group initially left together, but defendant returned for his cigarettes and was prevented from rejoining his friends by the arrival of the police.

After police officers made preliminary inquiries of the patrons remaining inside the club, defendant asked Butch Jackson to give him a ride to the Kettle Pancake House, where he believed his friends, the Locklears and Flints, had gone with his wife. Police officers found him there around 3:00 a.m., and he voluntarily returned with them to the club. He remained in the custody of officers and was placed under arrest around 6:00 a.m.

Laboratory tests performed upon defendant's shoes, pants, and shirt revealed spots of blood. Human blood also was found inside the right front pocket of his pants. Only one spot was large enough to test for type. This proved to be type O, the victim's blood type, which is present in forty-five percent of the population.

STATE v. CARTER

[326 N.C. 243 (1990)]

[1]  Defendant's first argument concerns his request for the trial court to include in its charge to the jury the following instruction:

> The State asked the question of the defendant whether he had ever stated "that he would kill anyone for his friend Butch Jackson." The defendant denied making any such statement. The State has in no manner elicited any type of evidence to support that this was ever said in any manner by the defendant. The jury is instructed to in no way consider this question by the State.

The requested instruction referred to this portion of defendant's cross-examination:

Q. Did you see Butch Jackson outside?

A. I could not tell who was outside. There was a lot of people outside pushing and shoving.

Q. All that fighting—

A. A lot of hollering at each other.

Q. You only spent one or two minutes outside and then went back inside—

A. Yes, sir.

Q. —to get your friends? Butch Jackson is a friend of yours, isn't he?

A. I have met Butch Jackson a couple of times.

Q. Didn't you state that, at the pig pickin' [after the killing], that Butch Jackson was a friend of yours and you'd cut anybody for a friend of yours?

A. No, sir.

Q. It didn't happen?

A. No, sir.

The trial court denied defendant's request. The prosecutor subsequently included in his closing argument the following speculation about a motive for defendant's murder of Charles Wood:

> Now, I can't tell you why Larry Carter came out of that bar and pulled that knife out and walked up to Charles Wood and slit his throat. Maybe it was because he saw his friend

STATE v. CARTER

[326 N.C. 243 (1990)]

Butch Jackson standing there between them, with Butch, and people talked about Butch having his hands in Charles' face. And you know how some people have to talk with their hands. I guess maybe I'm one of them. Maybe he saw Butch with his hands in Charles's face and he said (demonstrating.) But by the time he got over there, Butch had stepped to the side and Linwood West, a completely innocent bystander, a completely neutral party, steps in and he sees two people that look like they're getting ready to fight and he tries to stop them. And for some reason, I don't know why—maybe it was because he didn't get a lick in earlier, or maybe it was because he thought Charles was the troublemaker and Charles was involved in all the fights that night, or maybe it was because he wanted to take up for his friend Butch Jackson, or maybe it was because he's just damn mean—he reached out and took Charles Wood's life from him. Just like that.

Although defendant failed to object at this point, he later reiterated his motion requesting the above instruction, attaching a statement given by Jackson to officers that he had not gone outside the bar and that although he had seen defendant at the club before, he did not know his name. The trial court refused to give the instruction requested by defendant, saying:

Well, there are several reasons why I decline to give it. One of them is the rule that prohibits the trial court from expressing an opinion. And if I give it in the form requested, I'm afraid I would be expressing an opinion.

Secondly, I'm of the opinion that that's proper subject matter for argument to the jury, not necessarily for the Court to instruct. I believe that the requested instruction . . . will be otherwise covered generally by a compilation or consideration of the other instructions given, therefore, the request is denied.

We hold that the trial court ruled correctly. Trial judges are not required to state, summarize or recapitulate the evidence, N.C.G.S. § 15A-1232 (1988), although they *may elect* in their discretion to do so. *State v. Williams*, 315 N.C. 310, 323 n.1, 338 S.E.2d 75, 83 n.1 (1986). The exercise of such discretion will not be reviewed except upon a showing of abuse, and it will not be reversed except upon a showing that the ruling was so arbitrary that it

could not have been the result of a reasoned decision. *State v. Thompson*, 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985).

The trial court here clearly indicated a rational basis for its decision not to give the requested instruction, and we find its reasons sound. An evaluation of the weight and persuasiveness of the evidence is uniquely the task of the fact-finder. *E.g., State v. Davenport*, 225 N.C. 13, 16, 33 S.E.2d 136, 138 (1945). The trial court must avoid the hazard of offering to the jury any opinion on a question of fact the jury must decide. N.C.G.S. § 15A-1222 (1988). An opinion as to the *in*sufficiency of the evidence of a friendship between defendant and Jackson would have violated this rule. Moreover, counsel are free to argue facts in evidence and all reasonable inferences that can be drawn therefrom. *See State v. Huffstetler*, 312 N.C. 92, 112, 322 S.E.2d 110, 123 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). Wide latitude is allowed counsel in arguing hotly contested cases, and the parameters of that privilege are, like a decision to recapitulate the evidence, left largely to the court's discretion. *See, e.g., State v. Artis*, 325 N.C. 278, 323, 384 S.E.2d 470, 496 (1989). Defendant's denial that he had made any statement that he would kill for a friend was "conclusive" and thus voided the possibility that the statement itself was a fact in evidence. *See State v. Black*, 283 N.C. 344, 350, 196 S.E.2d 225, 229 (1973). However, other evidence of a relationship between defendant and Jackson was before the jury, including defendant's asking for and being given a ride by Jackson to the Kettle Pancake House in search of his wife and friends, which sufficed to support a reasonable inference of friendship that underlay the State's closing argument.

[2] Defendant next contends that the trial court erred in its rulings on the admissibility of evidence of prior convictions under N.C.R. Evid. 609(b), which provides:

Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein is not admissible unless the proponent

**STATE v. CARTER**

[326 N.C. 243 (1990)]

gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

N.C.G.S. § 8C-1, Rule 609(b) (1988).

In accordance with the mandate of Rule 609(b), the prosecution notified defendant of the State's intent to use eleven of defendant's convictions, eight of which were more than ten years old. Defendant moved to prohibit the use of these eight convictions, and the trial court allowed his motion as to three — two convictions for the illegal sale of beer and one for operating a motor vehicle without an operator's license. However, the trial court allowed the prosecutor to impeach defendant with the remaining convictions for assault and making an affray, reasoning that "the remaining convictions are convictions involving the use of violence; that the only purpose for admission through cross-examination would be to impeach the credibility or truthfulness of the defendant." It concluded that "in the interest of justice the probative value of these latter convictions substantially outweigh[s] any prejudicial effect that might be born by reason of elicitation of cross-examination of the defendant."

Pursuant to *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274 (1969), the trial court subsequently allowed defendant's motion in limine to prohibit the use of three of the remaining old convictions and one recent conviction based upon guilty pleas. The result of these rulings was that the following convictions were approved for the prosecution's use in cross-examining defendant:

1) Misdemeanor Assault, 6 March 1975;

2) Assault with a Deadly Weapon, 13 May 1975;

3) Operating a Motor Vehicle in a Careless Manner, 2 January 1979; and

4) Assault by Pointing a Gun, 19 May 1980.

The latter two convictions were plainly within the time period permitted by Rule 609(a) and thus admissible, but defendant now contends that permitting the State to impeach his credibility with the two thirteen-year-old assault convictions was prejudicial error.

Like other evidentiary rules that control the introduction of evidence of prior conduct reflecting upon a witness' truthfulness, N.C.G.S. § 8C-1, Rule 608 (1988), or upon motive, opportunity, in-

tent, preparation, plan, knowledge, identity, absence of mistake, or accident, N.C.G.S. § 8C-1, Rule 404(b) (1988), Rule 609(b) requires the trial court to engage in a balancing of the probative value of the evidence against its prejudicial effect. This balancing requirement is notably missing from Rule 609(a), under which all convictions less than ten years old are admissible without regard to any "rational relevance to untruthfulness." 1 Brandis on North Carolina Evidence 3d § 112 at 484 (1988). However, when the witness is the accused, the balancing requisite for Rules 608, 404(b) and 609(b) reflects the concern that the extrinsic evidence not reflect more upon the defendant's propensity to commit the kind of offense for which he is being tried than upon the particular purpose of the rule invoked. *See State v. Morgan*, 315 N.C. 626, 635-36, 340 S.E.2d 84, 90-91 (1986) (focus of evidence admissible under Rule 608(b) upon whether conduct is of type indicative of actor's character for truthfulness or untruthfulness; under Rule 404(b) evidence of other acts of the accused may not be introduced unless for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial); *State v. Tucker*, 317 N.C. 532, 543, 346 S.E.2d 417, 423 (1986) (only legitimate purpose for which defendant's prior convictions admissible under Rule 609(b) is to impeach his credibility).

Rule 609(b) is to be used for purposes of impeachment. The use of this rule is necessarily limited by that focus: it is to reveal not the character of the witness, but his credibility. Commentary on the use of impeachment generally, indicating, for example, that impeachment of a witness may be accomplished by "showing that the witness's character is bad," by, for example, "eliciting on cross-examination specific incidents of the witness's life tending to reflect upon his integrity or moral character," 1 Brandis on North Carolina Evidence 3d § 43 at 203, can have no justifiable application to the cross-examination of a criminal defendant. The only "legitimate purpose" for admitting a defendant's past convictions is to cast doubt upon his veracity; such convictions are not to "be considered as substantive evidence that he committed the crimes" for which he is presently on trial by characterizing him as "a bad man of a violent, criminal nature . . . clearly more likely to be guilty of the crime charged." *State v. Tucker*, 317 N.C. at 543, 346 S.E.2d at 423.

## STATE v. CARTER

[326 N.C. 243 (1990)]

In *Tucker*, this Court recognized the application of this general and longstanding principle to Rule 609:

[In a] prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. . . .

The general rule rests on these cogent reasons: (1) 'Logically, the commission of an independent offense is not proof in itself of the commission of another crime.' *Shaffner v. Commonwealth*, 72 Pa. 60, 13 Am. R. 649; *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193. (2) Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, when offered by the State in chief, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose. *State v. Simborski*, 120 Conn. 624, 182 A. 221; *State v. Barton*, 198 Wash. 268, 88 P.2d 385. (3) 'Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence.' *State v. Gregory*, 191 S.C. 212, 4 S.E.2d 1. (4) 'Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial.'

*Tucker*, 317 N.C. at 543-44, 346 S.E.2d at 424 (quoting *State v. McClain*, 240 N.C. 171, 173-74, 81 S.E.2d 364, 365-66 (1954)).

Federal courts have interpreted the use of the analogous F.R. Evid. 609 similarly.[1] Convictions for offenses like the offense for

---

1. The official commentary to N.C.R. Evid. 609(b) notes that its subsection (b) is literally identical to its federal model but that subsection (a) differs significantly: where the federal Rule 609(a) allows impeachment with evidence of conviction only of offenses involving dishonesty or false statement, the North Carolina analogue permits *any* sort of criminal offense to be the subject of inquiry for that purpose. Official Commentary, N.C.R. Evid. 609 (1988).

which a defendant is on trial are "presumptively barred" in federal trial courts because "[t]he jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged." *United States v. Beahm*, 664 F.2d 414, 418-19 (4th Cir. 1981). That Rule 609(b) requires a trial court to weigh the probative value of an old conviction against its tendency to prejudice the defendant reflects the same concern: when the witness is the accused, his past convictions should be offered for what they indicate about his credibility, not for what they indicate about his character.

With this in mind, it is apparent that the "specific facts and circumstances" articulated by the trial court as underlying its determination in this case that introduction of the thirteen-year-old convictions were more probative than prejudicial violated this principle. The court singled out and permitted evidence that defendant had committed prior assaults because they involved the use of violence. The trial court's conclusory remark that the only purpose for admission through cross-examination would be to impeach the credibility or truthfulness of the defendant was not a "fact" or "circumstance" vouching for an appropriate balance of probative over prejudicial weight.

The error, however, cannot be said to have been so prejudicial that there is any reasonable possibility that a different result would have been reached at trial had the court disallowed use of the thirteen-year-old assault convictions. N.C.G.S. § 15A-1443(a) (1988). At least two eyewitnesses had a clear view of defendant's face when he reached around Linwood West and drew his blade across the victim's throat. Several others saw him gesture towards Wood immediately before the latter collapsed, and they testified as to their certainty that he was the perpetrator based upon their observations of his size and stature and the unique color of his shirt. Although suspicion was cast upon Pinky Vinson because he had been fighting with the victim only moments before and because most eyewitnesses to the murder were old and close friends of his, the witness in the best position to view and identify the murderer—Linwood West—was a stranger to him and to the club. His objectivity and proximity to the offense lent substantial weight to his testimony.

[3] Finally, defendant contends that he was denied due process of law when the trial court denied his motion to require the State

to inform him of the prosecution witnesses' criminal records. Although defendant's counsel combed the records in the office of the clerk of Cumberland County, he found no convictions that would aid him in impeaching the witnesses for the State. He thus requested the trial court to order the district attorney to share its allegedly unique access to the "Police Information Network" ("P.I.N.") system.

Defendant had neither the statutory nor the constitutional right to the information he sought. N.C.G.S. § 15A-903 does not grant the defendant the right to discover the criminal records of the State's witnesses. To the contrary, "a provision authorizing the discovery of such material was included in the draft of the original bill and subsequently deleted." *State v. Robinson*, 310 N.C. 530, 536, 313 S.E.2d 571, 575-76 (1984). Moreover,

> [t]o establish a denial of due process defendant would have had to show (1) that [the witness] *had* a significant record of degrading or criminal conduct; (2) that the impeaching information sought was withheld by the prosecution; and (3) that its disclosure considered in light of all the evidence would have created a reasonable doubt of his guilt which would not otherwise exist.

*Id.* at 536, 313 S.E.2d at 576 (quoting *State v. Ford*, 297 N.C. 144, 149, 254 S.E.2d 14, 17 (1979) ). Defendant has not proven any one of these factors. As in *Robinson*, this assignment of error therefore must fail.

No error.